CHUNN *v.* CITY AND SUBURBAN RAILWAY OF WASHINGTON.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 43. Argued November 8, 1907.—Decided December 2, 1907.

An intending passenger coming to a place where passengers habitually board the cars of a trolley company, and which, in itself, is safe unless made otherwise by the manner in which the cars are operated, is not a trespasser nor a mere traveller upon the highway, but one to whom the company owes an affirmative duty and it is for the jury to determine whether the car injuring such person was operated with the vigilance required by the circumstances.

Where a trolley car platform is so narrow that its width cannot fairly be considered without taking into consideration the dangers on both sides of it, one taking a car on one side of it has a right to assume that he will not be put in peril by a car running rapidly in the opposite direction; and

he cannot, as a matter of law, be held guilty of contributory negligence in taking the car at that place. That issue is for the jury.

Even if the plaintiff carelessly places himself in a position of danger, if the defendant discovers the danger in time to avoid the injury by using reasonable care, the failure so to do, and not the plaintiff's carelessness, may be the sole cause of the resulting injury.

THE facts are stated in the opinion.

*Mr. Victor H. Wallace* and *Mr. Percy Metzger* for plaintiff in error:

Plaintiff was standing upon the platform of the defendant, and by its implied invitation, it was therefore the duty of the defendant to see that she was not injured. It was urged below that there was no evidence that the defendant ever built this platform, but see *Betts* v. *Railroad Co.,* 191 Pa. St. 575.

It was the duty of a servant in charge of one of defendant's cars, on approaching this platform, to have it under such control that it could be stopped in time to avoid injury to a prospective passenger standing upon this platform. This was not done in the present instance, and serious injury causing the permanent impairment of the mental faculties of the plaintiff in error was the result.

The failure of the motorman in charge of the defendant's car to have that car under such control that this injury might have been prevented was the proximate cause of the accident, and this question should have been submitted to the jury for determination.

The jury should have decided such a case as this. *Warner* v. *B. and O. R. R.,* 168 U. S. 339; *R. R. Co.* v. *Lowell,* 151 U. S. 209, 219, 220; *Inland &c. Co.* v. *Tolson,* 139 U. S. 551, 558, 559; *R. R.* v. *Amato,* 144 U. S. 465; *R. R. Co.* v. *Ives,* 144 U. S. 408; *R. R. Co.* v. *Powers,* 149 U. S. 43; *Jones* v. *Railroad Co.,* 128 U. S. 443; *McDermott* v. *Severe,* 202 U. S. 604, 609.

*Mr. Charles A. Douglas* and *Mr. George P. Hoover* for defendant in error:

The principle of law, upon which the court directed a verdict

for the defendant in this case, is conclusively settled, and has been fully and unequivocally recognized by the Court of Appeals, as well as by this and other courts.

There is no evidence tending to show negligence on the part of the defendant in error, but the evidence does show that the plaintiff in error was guilty of contributory negligence.

The case falls within the principle of cases which hold that a person stepping in front of a moving car is guilty of contributory negligence which bars a recovery. *Harten* v. *R. R. Co.*, 18 App. D. C. 260; *Northern Pacific R. R. Co.* v. *Freeman*, 174 U. S. 379; *Barrett* v. *Ry. Co.*, 20 App. D. C. 381; *R. R. Co.* v. *Houston*, 95 U. S. 697; *Edgerton* v. *B. & O. R. R. Co.*, 6 App. D. C. 516; *Miller* v. *St. Paul Ry. Co.*, 42 Minnesota, 454; *Childs* v. *New Orleans City R. R. Co.*, 33 La. Ann. 154; *St. Louis &c. R. R. Co.* v. *Martin*, 61 Arkansas, 549; *Creamer* v. *West End Ry. Co.*, 156 Massachusetts, 320; *Halpin* v. *3d Ave. R. R. Co.*, 40 N. Y. Super. 175.

If the plaintiff was in a dangerous position as the car approached her, which does not appear by the evidence, the motorman was justified in presuming that she would withdraw therefrom in time to prevent a collision. Booth on Street Railways, § 305; Nellis on Street Surface Railroads, 301; *W. Chicago R. Co.* v. *Schwartz*, 93 Ill. App. 387; *Citizens' St. R. Co.* v. *Shepherd*, 64 S. W. Rep. 710; *Ry. Co.* v. *Armstrong*, 92 Maryland, 554; *Egner* v. *Ry. Co.*, 98 Maryland, 397.

MR. JUSTICE MOODY delivered the opinion of the court.

This is a writ of error to the Court of Appeals of the District of Columbia. The plaintiff in error brought an action to recover damages for personal injuries which she alleged were suffered by her through the negligence of the defendant in error, a corporation operating an electric street railway. The defendant pleaded in abatement that the plaintiff was, at the time of bringing action, an infant, under the age of twenty-one years. Issue was joined on the plea. Thereafter the defend-

ant, on motion and payment of the costs, was permitted to
withdraw this plea and file a plea in bar. When the case came
for trial at a later term the plaintiff tendered back the costs
and moved the court to reconsider its order that the plea in
abatement might be withdrawn and the plea in bar filed, and
that the trial proceed upon the issue joined on the plea in
abatement. To the refusal to grant these motions the plaintiff
excepted. This exception requires no further consideration
than that given to it in the court below, and is overruled.

The plaintiff then introduced testimony in support of her
declaration, and at the close of this testimony the judge pre-
siding at the trial directed a verdict for the defendant. The
plaintiff excepted to the order of the court and her exception
was overruled by the Court of Appeals, and is now here for
our consideration. The question is, whether there was evi-
dence which, with the inferences reasonably to be drawn from
it, tended to prove all the essential elements of the plaintiff's
cause of action.

Without reciting all the testimony, which is set forth in full
in the opinion of the Court of Appeals, the facts disclosed by
it may be stated in narrative form. The plaintiff, a young
woman, had lived and worked in Riverdale, Maryland, for
about a year before the accident. During that time she had
frequently travelled to Washington on the defendant's cars.
It was the custom of persons who travelled from Riverdale
to Washington on the defendant's railway to board the cars
from what was called the platform near the station of the
Baltimore and Ohio Railroad. At that point there are two
tracks of the defendant running north and south. The distance
between the inner rails of the two tracks was seven feet ten
inches. The steps of the cars projected two feet two inches
beyond the tracks, leaving, when two cars passed each other
at this point, a clear space between them of three feet six inches,
so that, as one of the plaintiff's witnesses said, "there was
ample room to stand if you were thinking what you were doing."
The platform extended thirty feet lengthwise along the tracks.

It consisted of boards laid on the ground and sleepers and parallel with the tracks. It covered the space between the tracks and the rails of the tracks and the width of two boards beyond the outside tracks. A road ran west of and near the tracks. West of the tracks there was "a kind of sink," and those boarding the cars for Washington from that side had "to stand out in the mud or in that hole to get on the car." The cars to Washington ran on the west and the cars from Washington ran on the east track. It was the custom of persons taking the Washington car to board it from the east side, standing on the platform between the tracks, and the doors of the cars were opened to receive them from that side; sometimes, however, such passengers entered from the west side. The purpose for which the platform was originally constructed was not shown, but it was used in the manner stated and for the passage of persons and vehicles. One standing on the platform at this point could see or be seen for a distance of at least a quarter of a mile north or south. On the evening of September 29, 1900, the plaintiff came to this place to take the car for Washington. The hour was not stated, but it was light enough to recognize a person a hundred yards away. The plaintiff testified that she remembered nothing from the time she left her house until she recovered consciousness in the hospital; but from other testimony it appears that as the car for Washington approached from the north she went to the platform and stood between the tracks. There were other persons intending to take the car, one of whom stood near her and also between the tracks. As the car for Washington came from the north another of defendant's cars came from the south. The Washington car slowed down and came to a stop just as the latter car, without stopping, ran by "at a rapid rate of speed," as one witness said, or "twelve to fifteen miles an hour," as another witness said. No one saw exactly what happened to the plaintiff, who was standing near the north end of the platform, but the sound of "a shock" was heard, and the plaintiff was found unconscious between the tracks, ten or fifteen

feet north of the north end of the platform. It may be inferred that she was struck by the rapidly passing car bound north, which did not come to a stop, as one witness said, for one or two hundred feet beyond the platform.

If upon these facts reasonable men might fairly reach the conclusion that the plaintiff, while herself in the exercise of due care, was injured by the negligence of the defendant, the case should have been submitted to the jury. *Warner* v. *Balt. & Ohio Railroad*, 168 U. S. 339. That the plaintiff was injured by being hit by the car running north does not admit of doubt. We need not delay at that point, but may proceed at once to the other aspects of the case. The plaintiff had come to a place where passengers had habitually boarded the defendant's cars. The defendant had encouraged and invited persons to enter its cars going south from the space between the tracks, by opening the doors and receiving them from that side. It was a place which, in itself, was perfectly safe, unless made otherwise by the manner in which the defendant used the east track for the passage of cars. The plaintiff, therefore, was not a trespasser nor a mere traveller upon the highway. It is not important to determine whether she had become a passenger. Intending to become a passenger she had come to a place recognized by the practice of the defendant as a convenient and suitable one from which to enter the car, and the car stopped to receive her. The defendant owed her an affirmative duty. It was bound to use that care for her protection, which was reasonably required in view of the situation in which she had at the defendant's invitation placed herself, of the purpose for which she was there, of the approach of the car which she was intending to enter, and of the dangers to be apprehended from contact with a rapidly moving car propelled by mechanical power. A jury might well say that under such circumstances reasonable care demanded the exercise of the utmost vigilance, foresight and precaution. The motorman of the north-bound car could see plainly that the car for Washington was about to stop, and that passengers were standing upon the space be-

tween the tracks intending to enter it. He might readily have understood that the noise of the transit of the two cars would be commingled, and that those who intended to enter the other car would naturally direct their attention to it, and might fail to notice the approach of his own car. In point of fact, the motorman took no precaution whatever; he assumed that those who were standing on the platform would take care of themselves, and ran his car by them at full speed as if oblivious of their existence. We think, as the Court of Appeals held, that from the evidence the jury might have found that the defendant was negligent. The question whether the plaintiff herself was guilty of contributory negligence presents somewhat greater difficulty. There was room to stand between the two cars and escape contact with either. But the margin of safety was narrow and left little allowance for the infirmities of mankind. In the confusion of two cars approaching from opposite directions it is too much to expect nice calculations of distances. It is not to be wondered at that in the attempt to escape the one the plaintiff fell foul of the other. The same witness (himself standing on the platform between the tracks) who said that "there was ample room to stand if you were thinking about what you were doing" also said: "I realized that I would have to hold myself strictly in the center of the two tracks." We think that the plaintiff, if she was rightly where she was, was not as a matter of law guilty of negligence in failing to appreciate accurately the boundaries of the narrow zone of safety which the defendant's conduct had left to her. The three feet six inches width of the clear platform cannot fairly be considered without taking into account the dangers which infested the borders upon each side. A platform which would be wide enough for a child to walk in safety from the base of the Washington Monument to the steps of the Capitol, if elevated to extend from the summit of one to the dome of the other, would imperil the passage of the man of steadiest nerve. Nor was the plaintiff necessarily wanting in due care by taking her place between the tracks. It was the usual place

from which entrance to the Washington car was made. It was safe enough under ordinary circumstances. It was made unsafe only by reason of the defendant's negligent act in running another car rapidly by. The plaintiff had the right to assume that the defendant would not commit such an act of negligence, and that when it stopped one car and thereby invited her to enter it, it would not run another rapidly by the place of her entrance and put her in peril. We think that it cannot be said, as a matter of law, that the plaintiff was guilty of contributory negligence. That issue with the others in the case should have been submitted to the jury with appropriate instructions. Nor is it clear that, even if the plaintiff was not free from fault, her negligence was the proximate cause of the injury. If she carelessly placed herself in a position exposed to danger, and it was discovered by the defendant in time to have avoided the injury by the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the sole cause of the resulting injury. *Inland & Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551; *Grand Trunk Railway Co.* v. *Ives,* 144 U. S. 408, 429; *Washington & Georgetown Railroad* v. *Harmon,* 147 U. S. 571, 583; *Tuff* v. *Warman,* 5 C. B. N. S. 573; *Radley* v. *London & North Western Railway Co.,* 1 App. Cas. 754; Thompson on Negligence (2d ed.), §§ 238, 239; Pollock on Torts (6th ed.), pp. 441 to 447 inclusive.

   *The judgment is reversed and the case remanded to the Court of Appeals, with directions to reverse the judgment of the Supreme Court of the District of Columbia, and remand the cause to that court with a direction to set aside the verdict and award a new trial.*