## PENNSYLVANIA R. CO. v. SWARTZEL.

(Circuit Court of Appeals, Seventh Circuit. March 21, 1927.)

No. 3814.

1. Railroads ⬤◦348(8)—Evidence held to show truck driver's contributory negligence in collision with train.

In action for injuries arising from collision between plaintiff's truck and train at public highway crossing, evidence *held* to show that plaintiff was guilty of contributory negligence as matter of law in going upon tracks.

2. Railroads ⬤◦338—Under last clear chance doctrine, trainmen are only required to exercise ordinary care.

Under the last clear chance doctrine, railroad crew is not compelled, after seeing one in place of danger, to stop train, if possible, but only to exercise ordinary care in attempt to prevent injury.

3. Negligence ⬤◦83—Doctrine of last clear chance does not apply, unless danger is discovered.

Doctrine of last clear chance does not apply, unless danger is actually discovered, since whole theory of doctrine is based on and confined to conduct subsequent to discovery of danger.

4. Railroads ⬤◦348(6)—Evidence held not to establish railroad's negligence under doctrine of last clear chance.

In action for injuries arising from collision between plaintiff's truck and train at public highway crossing, evidence *held* insufficient to establish negligence of railroad under doctrine of last clear chance.

In Error to the District Court of the United States for the South Bend Division of the District of Indiana.

Action by Albert Swartzel against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Fred E. Zollars, of Ft. Wayne, Ind., for plaintiff in error.

Edw. O. Snethen, of Indianapolis, Ind., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. A jury awarded plaintiff, defendant in error, damages under his complaint against defendant, plaintiff in error. The injury to plaintiff arose from a collision between plaintiff's truck and defendant's train at a public highway crossing. One paragraph of the complaint alleges negligent operation of the train, and the other paragraph charges negligence under the "last clear chance" doctrine.

The tracks of defendant's railroad were about 4 feet higher than, and 50 feet north of, an east and west paved highway. At least a quarter of a mile east of a point where defendant had a coal chute over its tracks, near the town of Wanatah, Ind., was a north and south road, into which plaintiff, proceeding east with his truck loaded with gravel, turned north. At the turn he stopped, shifted his gears to low, and then proceeded up an incline of one-inch in twelve, at the rate of about 5 miles per hour to the most southerly of defendant's three tracks to the point of collision. Where the turn was made, there was nothing to obstruct a view of the tracks, except a line of telegraph poles on the right of way. A little closer to the tracks, there was a clear view west to the coal chute and beyond.

At the time of the accident, plaintiff was 57 years old, and lived in a hotel in Wanatah. He owned the truck which he was driving, and was an experienced driver. He had passed over the crossing many times, and knew that the north track was for west-bound trains, the south track for east-bound trains, that the middle track was a passing track, and that trains passed over those tracks at least every half hour during the day. His hearing was good, and his sight was so good that he could see an automobile a mile away. At the time of the accident, there was a strong wind from the west.

As plaintiff approached the tracks, he could have stopped his truck within 2 feet. After he made the turn, he looked several times down the tracks to the west, until he was within 10 feet of the tracks; he did not look again after that.

The colliding train was proceeding east on the south track at 25 miles per hour. It consisted of 5 cars, drawn by an engine that was moving backward; that is, the front, or pilot, end of the engine was attached to the cars. The engineer was at his station on the north side of the engine, and the fireman was at his station on the south side of the engine. The fireman saw plaintiff from a point 200 or 300 yards west of and up to the point of collision. When the train was within about 60 feet of the crossing, the fireman saw the plaintiff's truck, then about 10 feet from the crossing, and, in response to the fireman's directions, the engineer immediately applied the emergency brakes. That operation took about 30 seconds.

Between plaintiff's statements in an examination before the trial and his testimony at the trial there are many irreconcilable contradictions upon material points; but between his testimony at the trial and that of the other witnesses there is no contradiction, except

upon one point. Plaintiff said that on the south, or east-bound, track there was, just to the west of the point of collision, a cut of some 25 cars, with which there was neither engine nor crew. He saw and in his testimony described accurately the train which struck him, but says that it was standing still, 100 feet west of the crossing on the middle track. The train which he describes, as all other witnesses described it, was on the south or the east-bound track when it struck him. Nobody else saw any unattached cars on the south tracks. Two fast, through, east-bound trains had just passed over that track.

There is no credible evidence from which it can be inferred that there was a cut of cars on the south track, or that plaintiff saw any train on the middle track, standing still, 100 feet west of the crossing.

The engineer and fireman both testified, positively, that they complied with the law in ringing the bell and blowing the whistle upon the engine. That testimony could not be fairly overcome by the fact that others in various positions said that they did not hear either.

[1] The evidence shows that plaintiff was so clearly guilty of contributory negligence in going upon the tracks that, as a matter of law, there could be no recovery under the first paragraph of the complaint. That seems to be practically conceded, but it is sought to sustain the recovery upon the "last clear chance" doctrine, and the remaining question is whether there is any evidence to sustain a recovery on that theory.

[2] The instruction of the court to the jury upon the doctrine of "last clear chance" is discussed at length, but, as no objection was made or exception preserved, we do not consider the instruction, except to say that, after the court had told the jury that defendant's duty, under the circumstances, was to use ordinary care in an attempt to prevent injury, the court later, in the instruction, told the jury that, if the crew saw the plaintiff in a place of danger, they would be compelled, if possible, to stop their train and prevent the injury. To use ordinary care to prevent an injury, and to be compelled, if possible, to prevent an injury, are quite different things. The correct rule requires the exercise of ordinary care; to say that the crew were compelled, if possible, to stop the train, placed too high a degree of responsibility upon the defendant.

The doctrine of "last clear chance" did not grow out of the establishment or creation of any new responsibility fixed by law upon wrongdoers, but it grew out of the fact that the law holds liable for injuries those who are responsible for the proximate cause of the injury, and the courts, searching for the proximate cause, found that in those cases where A, when he discovers B in a place of danger, must, regardless of all other considerations, himself use that which will be, under the circumstances, ordinary care to prevent injury to B. How B got into the position of danger is unimportant, because the proximate cause which justifies a recovery is A's failure to use ordinary care after the discovery. Compelling one to respond in damages under such circumstances is merely fixing a penalty for that which is a breach of a rule of conduct in all civilized society, namely, that one may not either wantonly or carelessly cause injury to another. The doctrine was enunciated in Davies v. Mann, 100 Meeson & Welsby, 545, as early as 1842, and ordinary care was stated as the measure of defendant's duty. In Chunn v. City & Suburban Ry., 207 U. S. 302, 309, 28 S. Ct. 63, 52 L. Ed. 219, the Supreme Court stated the doctrine thus:

"Nor is it clear that, even if the plaintiff was not free from fault, her negligence was the proximate cause of the injury. If she carelessly placed herself in a position exposed to danger, and it was discovered by the defendant in time to have avoided the injury by the use of reasonable care on its part, and the defendant failed to use such care, that failure might be found to be the sole cause of the resulting injury."

[3] Clearly, the rule does not apply in a case unless the danger is actually discovered, because the whole theory of the doctrine is based upon and confined to conduct subsequent to the discovery of the danger. The action required of the defendant, after discovering the danger, is one, as the rule states, of ordinary care, under the circumstances there present.

[4] The fireman said that when he first paid particular attention to plaintiff, the train was about 100 feet from the crossing and the truck was within about 20 feet of the track, going very slowly, and he thought plaintiff was going to stop; that when the truck was within 10 feet of the track and the train about 70 feet away from the crossing, and he did not see the plaintiff making any motion to stop, he told the engineer to put on the brakes, which was immediately done.

Watching plaintiff's truck from the time it was 20 feet from the tracks, the fireman was impressed with the belief that the slowly moving truck was going to stop, until it got within 10 feet of the track. There is nothing in the record to contradict the fireman, or to raise any question as to the correctness of that con-

clusion. When the truck got within 10 feet of the track, the fireman concluded that it was going to proceed, without stopping, into danger. Plaintiff testified: "When I reached a point 10 feet from the track, I saw the train standing. I then proceeded to cross the track." From this, it appears that the plaintiff himself concluded that the question as to whether it was safe to proceed was to be determined, and he did determine it, when he was 10 feet from the track. He was not in any place of danger at that time, because his statement was that, under the circumstances, he could have stopped within a space of 2 feet.

The only evidence as to the speed of the train is that it was going 25 miles per hour. Other than the testimony of the fireman that the truck was going very slowly, the only evidence as to its rate of travel was that plaintiff testified that it was going 5 miles per hour. That is, the train was going five times as fast as the truck, which statement corresponds very closely with the testimony that when the truck was within 20 feet of the track the engine was 100 feet away, and that when the truck was within 10 feet of the track and the fireman gave the signal to put on the brakes the train was some 70 feet away. The train was going at the rate of 2,200 feet per minute or about 35 feet per second. The engineer said, and there is nothing to contradict him, that it took him about 30 seconds to shut off the throttle and apply the brakes, which were in good condition. If, when the truck was within 20 feet of the tracks, and the engine 100 feet away, the danger had been apparent, and the signal had been given to apply the brakes, the train would have moved much more than the 100 feet within the time necessary for the engineer to perform the operation of closing the throttle and applying the brakes.

The evidence is that the bell was ringing. Whether the whistle was under the control or within the reach of the fireman does not appear. It is not suggested that the engineer should or could have done more than he did. It is urged upon us that some one could then have blown the whistle. It is possible that that might have been done, but the whole situation must be looked at from the point of view of the fireman in the cab. There were less than 3 seconds for the fireman to act when the train was 100 feet from the crossing. There were less than 2 seconds when it became apparent to him that plaintiff was passing into danger. To say that the fireman, in the time at his disposal and under the circumstances, should have blown the whistle would be charging upon the defendant a higher degree of care than required by law. There is no probability that a reasonably careful and prudent person, acting under like circumstances, would have done more.

The judgment is reversed, and cause remanded.