### PENNSYLVANIA R. CO. v. SWARTZEL.
### No. 4196.

Circuit Court of Appeals, Seventh Circuit.
Feb. 26, 1930.

Rehearing Denied April 10, 1930.

Alschuler, Circuit Judge, dissenting.

Fred E. Zollars, of Fort Wayne, Ind., for appellant.

Edward O. Snethen, of Indianapolis, Ind., and Lenn J. Oare, of South Bend, Ind., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

Our opinion on the first appeal of this case is in 17 F.(2d) 869. Except in particulars here shown, the facts are there sufficiently stated.

On the second trial, some of appellee's testimony was slightly more favorable to himself than that given upon the former trial.

The record shows that the witness Cowan, in the former trial, testified that he heard no whistle or bell sounded. The record here makes him say that neither whistle nor bell was sounded. He testified by deposition, and apparently the difference arose through the method of abstracting the same deposition, used in both trials.

Upon the second trial, the engineer testified that it would take him four or five seconds to shut off the throttle and apply the emergency brakes. He explains that the former record, showing that he testified it would take 30 seconds to do that work, was erroneous, and that he did not so testify.

We have carefully read and considered those changes, and are of opinion that they do not affect the conclusion that should be reached in this case.

On the second trial a new witness was permitted to testify to the distance within which a train can be stopped. That witness, in nine years, had been a switchman for five different roads, and had fired a few days. Neither his experience nor his knowledge qualified him to answer the questions asked. His testimony that a train going 25 miles per hour could be stopped within 75 to 100 feet, evidently did not take into account the distance that the train would travel during the time consumed by the fireman in transmitting the message to the engineer, and the four or five seconds required for the engineer to shut off the throttle and apply the emergency brakes.

Considering all of the new testimony, in connection with the analysis of the speed of the truck and of the train, and the location of the two after the truck had turned and started north, as shown in our former opinion, the new evidence does not help appellee's case.

Let us assume that when appellee started his truck, when he was 30 or 40 feet away from the tracks, as testified in this case, he had no intention of stopping until after he had crossed the tracks, and that under the doctrine of "last clear chance" the fireman should have discovered that fact, then the situation is this: The train was moving at five times the speed of the truck, so that when the truck was 40 feet away (taking the highest figure), the train would have been 200 feet away from the crossing; taking no time out for the transmission of a message from the fireman to the engineer, and taking four, instead of five, seconds for shutting off the throttle and the application of the brakes, the train would have traveled 140 feet before the applied brakes commenced their work of stopping the train; if the train had thereafter been stopped within the distance testified to by the new witness, 75 feet would have carried it well upon the crossing, and 100 feet would have carried it over the crossing. That result probably could only have been reached by the exercise of the highest degree of care.

It may be suggested that, instead of devoting their time to stopping the train, the prudent thing would have been to blow the whistle. This situation indicates an emergency in which the engineer and the fireman were called upon to act instantly. We have recently held, in Greyhound Lines v. Noller, 36 F.(2d) 443, that one is not to be charged with negligence because, acting in an emergency, he does not choose the course of action that a more deliberate judgment would show was open to him. All the foregoing is upon the assumption that the fireman, in the exercise of ordinary care, must have seen from the actions of appellee that he intended to cross the tracks without stopping, after the start made upon the shifting of his gears. The evidence clearly shows that appellee had no such intention. In the former trial he testified: "When I reached a point 10 feet from the track, I saw the train standing. I then proceeded to cross the track."

Upon this trial, to show that he was in the exercise of due care, he makes it clear that when he got within 20 feet of the track he looked and listened, and again when he got within 10 feet of the track he looked and listened. He could not have looked or lis-

tened with any other intent than that if he saw the necessity therefor, he would stop. The appellant should not be held to be lacking in the exercise of ordinary care because its fireman did not earlier discover an intention on the part of appellee which his own testimony shows he did not have.

Attached is an exhibit showing the crossing.

The judgment is reversed.

Defendant's Exhibit No. 1.

ALSCHULER, Circuit Judge.

I find myself unable to concur.

At the request of appellant the court charged the jury that when those in charge of a moving railroad train see a traveler on a highway approach a crossing, they may presume that the traveler will exercise the reasonably necessary care for his own safety "until they know, or in the exercise of reasonable care have reason to believe, that the traveler on the highway will not stop or

exercise due care himself to avoid injuries from such train."

If in the exercise of reasonable care those operating the train discover the traveler's plight, and take such action to avoid the disaster as might then be expected of a reasonably prudent person, or in the exercise of ordinary care they make this discovery too late to do anything to avoid injuring the traveler, there will be no liability for resulting injury. But if those in charge of the train knew, or by the exercise of reasonable care should have known, that the traveler would not stop or otherwise exercise due care, for himself, and this in sufficient time to do something which a reasonably prudent person would do to avoid the accident, and, failing so to do, the accident results, then, under the charge and the law, liability would follow. Kansas City So. Ry. Co. v. Ellzey, 275 U. S. 236, 241, 48 S. Ct. 80, 72 L. Ed. 259; Chunn v. City & Suburban Ry. of Washington, 207 U. S. 302, 309, 28 S. Ct. 63, 52 L. Ed. 219; Washington & Georgetown R. Co. v. Harmon's Administrator, 147 U. S. 571, 578, 13 S. Ct. 557, 37 L. Ed. 284; Inland & Sea-Board Coasting Co. v. Tolson, 139 U. S. 551, 558, 11 S. Ct. 653, 35 L. Ed. 270; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 429, 12 S. Ct. 679, 36 L. Ed. 485; Terre Haute, I. & E. Traction Co. v. Stevenson, 189 Ind. 100, 123 N. E. 785, 126 N. E. 3; Pittsburgh, C., C. & St. L. R. Co. v. Bunting, 84 Ind. App. 45, 149 N. E. 916; Indianapolis Traction & Terminal Co. v. Croly, 54 Ind. App. 566, 96 N. E. 973, 98 N. E. 1091.

This record presents a situation quite out of the ordinary. Appellee was driving a large truck heavily loaded with gravel, preceded by another truck similarly loaded. The highway paralleled the track, 30 or 40 feet away, for about a mile, then turned toward the track and passed over it. The fireman said that he saw the trucks when appellee was about 1,500 feet away from the turn, and thereafter had them in view until the first truck had safely crossed the track, and the other met with disaster. He testified:

"I saw the truck make the turn to go north across the track; saw it practically all the time until the collision. I didn't give any signal myself until he was about ten feet from the track. I did not give any signal at the time I told the engineer to put on the brake; I told him to put on the brake when the truck was about ten feet from the track. We did not whistle after we whistled at the whistling post (80 rods away); we didn't give any additional signals when I saw him within ten feet of the track; nothing only the bell. * * * After the truck made the turn it was going about five miles per hour up the grade. * * * I mean when Mr. Swartzel was going up that grade with his truck, he was barely moving; that is what I mean when I say he was going about five miles an hour. He was going awfully slow. * * * At no time did I see an indication on the part of the truck driver that he intended to stop. I did not see him stop at any time. From the time I first saw him until the time he was struck I saw no indication on his part that he intended to stop. I could not see whether he looked in our direction."

The 30 or 40 feet from the turn in the highway to the railroad crossing has an up grade of 10 per cent. to 12 per cent. Common experience would indicate that when a heavily loaded truck started up this grade, there was manifested an intention of going its entire distance without stopping. The logical place to have stopped would have been just after the turn was made, as it is quite evident that if a stop were made while ascending the grade, the truck might roll back, or be required to back up in order to get another start. The fireman said it was going very slowly, and it requires no stretch of imagination to conclude that the fireman, with his experience, seeing a heavily loaded truck start up this grade, would at once realize that in all probability the driver was expecting to continue without stopping for the train.

To my mind this was such an indication that the driver was going to proceed without stopping, as to warrant the jury in concluding that the fireman, if in the exercise of reasonable care, ought to have known, from the time the driver started up that grade, that in all probability he was not intending to stop and would not stop.

What then should an ordinarily prudent person in the fireman's situation have done? Generally speaking, it is quite true that where an emergency is suddenly presented, a definite and particular course of conduct cannot be required from him whom it confronts. But whether the circumstances here appearing presented such an emergency was for the jury to say. Of men experienced and skilled in the operation of trains, and in meeting with sudden situations, and charged with the duty of watching highway crossings, far more may be reasonably anticipated in their exercise of ordinary care than of those

unaccustomed to such things. Appellee said he stopped and changed his gear just before starting up the grade; but, at any rate, when he started his heavy load up this grade, without indication of his stopping for the train, may it not be said that if the air brakes had been applied at once, instead of when the truck was within 10 feet of the track, the truck would have passed safely; and was not this a question for the jury? I surely think so. ·

Appellant employs figures to indicate that, running as the train was at 25 miles an hour, the accident would have occurred just the same. Figures are at best quite unreliable in such contingencies; but, depending as they do here upon so many conditions, their value was for the jury.

But apart from the failure to apply the brakes sooner, is it not plain that ordinary prudence would have suggested to the fireman the very simple expedient of giving an alarm to arouse this man from his manifestly false sense of security, so at least to have made this a jury question? I cannot escape an affirmative answer.

But, says the fireman, "After we give the statutory signals we do not give any additional signals, and that is the way I operate as a fireman. We gave the crossing signal at the whistling post." Evidently it was his state of mind that compliance with the statutory requirement of whistling 80 rods from the crossing, was an inhibition upon employing the whistle at any other time or under any other circumstances, even though well knowing that one blast would in all human probability avoid an otherwise inevitable collision.

It seems so entirely probable that a single toot of the whistle, as the man started up the grade without indication of stopping, would have aroused him from his apparent revery, or daydream, or what not, and caused him to stop in time to avoid the accident, that it was at least for the jury to decide whether in this situation ordinary care on the part of the fireman required that this be done. Also it is highly probable that even a call from the nearby fireman would have arrested the driver's attention and caused him to stop in sufficient time.

To my mind it was for the jury to say whether the fireman knew, or in the exercise of reasonable care should have known and appreciated, the danger into which this man appeared inevitably to be moving, in sufficient time to have done that which an ordinarily prudent person would have done, and

thereby in all probability have avoided the collision.

Within the latitude of the court's charge the jury evidently found, as I think it had a right to find, that the "last clear chance" was with appellant to have avoided the accident by doing that which in the exercise of ordinary care it should have done.

I am of the opinion that, having due regard for the verdict of the jury, we are not at liberty to disturb its conclusion in this respect, supported as it is by an abundance of evidence which the record now before us affords. To my mind there was no error in submitting to the jury the question of "last clear chance"; nor does error appear in any other of the propositions urged for reversal. The judgment should be affirmed.