## PORTO RICO RY. LIGHT & POWER CO. v. MIRANDA.

### No. 2697.

Circuit Court of Appeals, First Circuit.
Dec. 29, 1932.

Henri Brown, of San Juan, Puerto Rico, and Edward J. Patterson, of New York City (Carroll G. Walter, of New York City, on the brief), for appellant.

Ismael Soldevila and Guerra-Mondragon & Soldevila, all of San Juan, Puerto Rico, for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action of tort brought to recover damages for personal injuries sustained by the plaintiff on the 7th day of October, 1918, through the negligence of the defendant wherein her right leg was injured, necessitating amputation at or near the knee.

The action was brought in the District Court of San Juan, January 24, 1919. August 9, 1920, that court found a verdict and entered judgment in favor of the plaintiff. An appeal was taken to the Supreme Court of Puerto Rico, and on April 17, 1923, the judgment appealed from was reversed, and the case remanded with leave to amend the plaintiff's complaint and for a new trial. The chief ground for reversal appears to have been that the complaint failed to disclose any duty due the plaintiff calling upon the defendant to reduce the speed of its street car or to ring the bell; that it should have set forth that the place where the accident happened was one where the defendant should have foreseen that the plaintiff and

other members of the public might be, and that, if the motorman had exercised reasonable care, he would have seen the plaintiff in time to have avoided the accident. After the case was sent back to the District Court, the plaintiff, on May 19, 1923, amended her complaint. April 25, 1925, the defendant filed its answer, which contained a general denial, and, as a special defense, pleaded contributory negligence. June 3, 1926, the second trial was begun. The District Court again found in favor of the plaintiff, and, on February 20, 1928, entered judgment in her favor. On February 20, 1928, the case was again appealed to the Supreme Court, which, on July 24, 1931, after reviewing the evidence, found in favor of the plaintiff and entered judgment affirming the judgment of the District Court of February 20, 1928. It is from the judgment of July 24, 1931, that the defendant, the Porto Rico Railway Light & Power Company, prosecutes its appeal to this court.

There are nineteen assignments of error. They are poorly drawn, and some of them so inept that it is difficult to know just what is really assigned. Others would indicate that the draftsman thought the facts were open to review here on the weight of the evidence. But this is not so. Our jurisdiction on appeal from the Supreme Court of Puerto Rico in an action at law is limited to reviewing questions of law. We think, however, that, so far as they are pertinent, they may be reduced to the following: (1) That the Supreme Court erred in holding that the facts found were sufficient to warrant the application of the doctrine of the last clear chance; (2) in holding that the doctrine of the last clear chance is applicable where the facts disclose that the defendant should have known of and anticipated the plaintiff's presence in a dangerous situation and exercised due care to avoid injuring her—that that doctrine is only applicable where the defendant is found to have seen and known of the plaintiff's presence in a dangerous situation; and (3) if the facts found by the Supreme Court were sufficient to warrant the application of the doctrine, there was no evidence from which those facts could be found.

The facts found by the Supreme Court, as far as we can determine from its opinion, are in substance the following: That on the day of the accident the defendant was operating its street car in the municipality of San Juan along Ponce de Leon avenue from stop 20 to stop 19 in a thickly populated section of the city; that stop 20 (the direction from

which the car was coming) was at the corner of Hippodrome street and Ponce de Leon avenue, and stop 19 was in front of the Boys' Charity School; that there was a switch at stop 19; that adjacent to the Boys' Charity School was a chapel; that north of this was a vacant lot, and that north of this lot and between it and the corner at stop 20 were four houses; that in front of the two houses nearest to the chapel and north of the vacant lot was a fence; that along the same side of Ponce de Leon avenue and between the fence and the main traveled portion of the avenue ran the defendant's street car tracks; that in front of these two houses and between the car track and the fence was a path or narrow strip of land; that just how much of this space was left free and open between the fence and the side of a passing car did not appear; that there was no doubt about the dangerous character of the place; that the first house north of and nearest to the chapel, in front of which was the fence, was the Barletta house; that about 8 o'clock in the morning the plaintiff left the Barletta house, passed through the front gate, and, without looking to her right toward stop 20, turned to her left and walked toward stop 19 along the path between the Barletta fence and the track; that the distance from the gate to the end or corner of the fence was 3 meters (10 feet); that at or near the corner (end) of the Barletta fence the plaintiff was struck from behind by defendant's street car; that the track from stop 20 to the place of the accident was straight and the view unobstructed; that at the time the plaintiff passed through the gate and entered the narrow passageway the car, according to one witness, was 5 or 6 meters away, and, as stated by the same witness at another time, the distance was two car lengths; that at the time of the accident the car was running slowly down grade, the power having been shut off; that the motorman did not see the plaintiff before the car struck her and did not ring the bell or give any other warning or make any effort to stop the car until after the accident; that the car could have been stopped at any time within the distance of one meter (about 3 feet and 3 inches); that it was not stopped until after the four wheels on the left side of the car had passed over the plaintiff's right leg and until after the conductor and inspector standing on the rear platform, looking back, had seen the plaintiff on the ground and signaled the motorman to stop; that the distance from where the plaintiff lay to the rear platform of the car, after being struck and run over, was estimated by the conductor as 3 or 4 meters, and by other witnesses as 8 or 10, and 15 or 20 meters; that a passenger seated in the second seat from the front on the left side of the car testified that he saw the plaintiff when she passed through the gate and turned into the path; that she was walking close to the fence; that no bell was rung; that the place was dangerous, very narrow; that it was customary to ring the bell on passing that place to give warning, because it was very narrow; that America Barletta testified at the first trial that the space between the track and the fence was less than a meter in width and that a witness at the second trial testified that the space between the fence and a car was not over half a meter in width (19.86 inches); that, if the testimony of this witness be true, the clear space between the side of a passing car and the fence would be something less than 20 inches; that, if the estimate of Miss Barletta was to be taken as correct, then something less than a meter was the true width between the fence and the track, approximately half of which was taken up by the overhang of the car, and the result would be the same—less than 20 inches; that, whether the evidence established that the street railway at this point lay along an untraveled portion of the public highway or not, other facts disclosed that the path was used as a sidewalk for travel in a thickly populated section of the municipality, more than sufficient to establish a duty on the part of the defendant's motorman to keep a lookout; that the plaintiff was not a trespasser; that the defendant had for many years been running its cars by the Barletta house, was fully aware of the manner in which the narrow space between the track and the fence was used by the public, and was bound to anticipate the presence of pedestrians on the pathway, keep a lookout, and use reasonable care to avoid injuring them; that, if the plaintiff, after taking the first few steps along the path, had discovered the proximity of the approaching car, her escape was cut off; that she was then in imminent peril; that thereafter the defendant could, by the exercise of due care, have avoided the accident, while she could not; that, the defendant having the later opportunity to avoid the accident, its negligence was the sole proximate cause.

■■ It has been the recognized rule in this circuit since 1914 that, in a situation like the one here found to exist, the last clear chance doctrine applies, although the defendant may not have seen and known of the dangerous situation of the plaintiff, if circumstances existed from which he should have anticipated

the presence of the plaintiff at the place of the accident, and, in the exercise of reasonable care, could have seasonably known of his presence and avoided an accident. Middlesex & B. St. Ry. Co. v. Egan (C. C. A.) 214 F. 747. In that case it appeared that Egan, the plaintiff, was run over by the defendant's motorman while lying prostrate upon the track at the junction of Main and Newton streets in Waltham, where the public were accustomed to cross the latter street; that the place was in the thickly settled part of the city and near its center; that an arc light at that corner cast a light down Newton street in the direction from which the car was coming for a distance of about 100 or 150 feet, so that the motorman, had he exercised ordinary care, would have seen Egan on the track; that he would have seen that Egan was apparently incapable of extricating himself from danger and at a time when he could have stopped the car and avoided injuring him; that, having failed to do so, and Egan being incapable of extricating himself from his peril, the jury were warranted in finding that the motorman was negligent in running upon him; and that his presence upon the track was a mere condition and not a contributing cause.

The doctrine of the last clear chance was therefore applicable to the facts found by the Supreme Court of Puerto Rico in this case, and this was so, even though the defendant's motorman was not shown to have seen and known of the plaintiff's dangerous situation before he ran upon her, for the evidence and the facts found clearly disclose circumstances from which he should have anticipated that the traveling public, of which the plaintiff was one, was liable to be going down this path in the locality where she was, and was negligent in not being on the lookout and avoiding injuring her, which the facts show he reasonably could have done after she was in a position from which, by the exercise of reasonable care, she could not have avoided the peril.

The Supreme Court, in Kansas City Sou. Ry. v. Ellzey, 275 U. S. 236, 241, 48 S. Ct. 80, 81, 72 L. Ed. 259, states the doctrine of the last clear chance as follows: "That doctrine, rightly applied in the Chunn Case [207 U. S. 302, 28 S. Ct. 63, 52 L. Ed. 219], amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident." See,

also, Little v. Boston & M. Railroad, 72 N. H. 502, 57 A. 920.

This disposes of the questions raised by the first two assignments of error above stated.

The remaining question is whether there was evidence from which the Supreme Court could have found the facts that it did. That court, in finding the facts, in substance recounted the evidence upon which the facts were based, though perhaps not in such detail as the evidence itself discloses. The evidence shows that, as the plaintiff came out the gate of the Barletta house and turned to the left down the passageway, the car, which had previously stopped at stop 20, was starting or was on its way down the grade; that the passageway, at this point, was only 10 feet long; and that, after the plaintiff had taken a few steps down it, the car must have been almost upon her, so that it was not probable that she could have avoided the danger by the exercise of due care; that thereafter she in fact went but a few steps before being struck by the car, she not then having reached the end of the passageway.

Then again there was abundant evidence that this passageway was one which the public had used for at least twenty-five years in going forward and back between stop 20 and stop 19; that the people living in the houses in that locality had continually used it in going to stops 19 and 20; that the defendant and its motormen had known of the passageway and its use by the public for a long period of time, and knew that their street cars when run past it rendered the passageway dangerous; that it was the custom of the motormen to sound the bell when approaching the locality, and this custom was generally known and relied upon; that the passageway was not only narrow, but a passing car with its sides projecting outside the rail, as it is common knowledge they do, would render it practically certain that persons using the passageway would be struck if a car passed them while there. The evidence indicates that the car was traveling about three times as fast as the plaintiff was walking, and could have been stopped within a meter (about 3 feet and 3 inches) and the accident avoided at any time up until after the car was within 3 or 4 feet of her. There was evidence in support of the findings.

The judgment of the Supreme Court of Puerto Rico is affirmed, with costs to the appellee.

MORTON, Circuit Judge.

I concur for the reason that the question seems to me to be one of local law; as to which the judgment of the Supreme Court of Puerto Rico ought not to be set aside unless it clearly appears that the local law was wrongly interpreted or applied.

The action is based on the Civil Code (section 1803, edition of 1902, section 4909, edition 1911) which reads: "A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done"; and on the next section which reads: "The liability referred to in this section shall cease when the persons mentioned therein prove that they employed all the diligence of a good father of a family to avoid damage." Section 1803 "is the same as article 1902 of the Spanish Civil Code." Arreche v. Porto Rico Railway Lt. & Pow. Co., 31 Porto Rico 424, 426.

The Supreme Court of Puerto Rico feels itself free to decide damages, either in accordance with the Spanish Law, as evidenced by the Code, or by the principles well established in American jurisprudence, whichever appears to be "more in harmony with equity and justice and with the spirit of the law itself." Gonzalez v. San Juan Lt. & Transit Co., 17 Porto Rico 115 at page 125. See, too, Orta v. Porto Rico Railway Lt. & Pow. Co., 36 Porto Rico 668, 673 et seq. In Candal v. Sociedad Española de Auxilio Mutuo, 37 Porto Rico 811, it was said by the court, "In Velez v. Llavina, 18 P. R. 634, it was pointed out that the American doctrine and jurisprudence as to negligence and torts will be adopted and followed in this jurisdiction only to the extent that such doctrine and jurisprudence 'are based on the principles of our Civil Code, or are derived from general principles of law not in conflict therewith.'" In Rosado v. Ponce Railway & Light Co., 18 Porto Rico 593, it was held, as stated in the headnote, that: "Even supposing that the person who suffers an accident is guilty of contributory negligence, this fact does not bar him from obtaining indemnity for the damages sustained on account of the accident if the same could have been prevented by reasonable care and prudence on the part of the defendant." "There are many cases which decide that although a complainant might, by the exercise of caution, have avoided the accident, yet he may, nevertheless, recover, if it be shown that the defendant might have avoided the accident by the exercise of proper care." MacLeary, J., Rosado v. Ponce Ry. & Light Co., supra, at page 617

of 18 Porto Rico, citing United States cases. In Velez v. Llavina, 18 Porto Rico 634, it was held that the owner of a private automobile was not liable for acts of negligence by the person employed by him as chauffeur, unless the automobile was part of the business of a common carrier. This doctrine was enforced in other cases.

It is clear that the law of Puerto Rico with respect to liability for negligence rests on different principles from those which prevail in this country. As applied to the present case, the civil law of the Porto Rico Code as interpreted by the Puerto Rico courts appears to approach closely the common-law doctrine of "last clear chance," discussed in the majority opinion. But this agreement is more or less accidental; in the next case the difference in legal systems might lead to a different result. So I prefer to rest my conclusion on the ground above stated.