## JERRELL v. NEW YORK CENT. R. CO.
### No. 129.

Circuit Court of Appeals, Second Circuit.
Jan. 15, 1934.

Flynn, Tillou, Phillips & Ward, of Buffalo, N. Y. (William J. Flynn, of Buffalo, N. Y., of counsel), for appellant.

Rann, Vaughan, Brown & Sturtevant, of Buffalo, N. Y. (Noel S. Symons and John E. Leach, both of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendant for injuries caused by a collision on January 3, 1932, between a motorcar in which he was a passenger, and a freight train, at a grade crossing in the Province of Ontario. The case was tried on the assumption that though a passenger, the plaintiff was equally responsible with the driver for the operation of the car, and we shall treat them as one. The car was going north on a main highway; the track ran at right angles and the train was bound east; both were moving at between thirty-five and forty miles an hour. The crossing was protected by a "wigwag," a semaphore with a disk at the end, whose movement gave notice of the approach of a train. As the car came north along the highway towards the crossing, the view to the left was somewhat obscured by an orchard west of the road, but the boughs were bare in January, and it is too clear for dispute that a driver could in ample season have seen an approaching train between the boles of the trees. The plaintiff gave the usual testimony in such cases that the locomotive neither whistled nor rang its bell, and that the wigwag was not moving. In this he was corroborated by apparently disinterested witnesses, and, although these issues were disputed, they were very clearly for the jury. Nevertheless the plaintiff might, perhaps, have been properly nonsuited because of his contributory negligence, except for chapter 27 of the Ontario Statutes of 1930 as amended by chapter 26 of the Statutes of 1931. Section 4 of this act provided that, "in any action for damages which is founded upon the fault or negligence of the defendant, if fault or negligence is found on the part of the plaintiff which contributed to the damages, the court shall apportion the damages in proportion to the degree of fault or negligence found against the parties respectively." Section 7 provided that "in any action tried with a jury, the degree of fault or negligence of the respective parties shall be a question of fact for the jury." The judge thought that under the decisions of the Canadian courts construing this statute, the plaintiff's negligence was not merely a contributing, but the sole, cause of the collision, and for that reason directed a verdict for the defendant, from the judgment on which the plaintiff appealed.

So far as the Canadian law (section 4) apportioned damages according to the relative negligence of the parties, it went to the substance of the liability, and must be followed when suit is brought elsewhere. Missouri Pacific Ry. Co. v. Larussi, 161 F. 66 (C. C. A. 7); Keane Wonder Mining Co. v. Cunningham, 222 F. 821 (C. C. A. 9); Restatement of Conflict of Laws, § 422. Indeed, the parties have so stipulated. We are relieved from deciding whether section 7 must also have been followed, had the evidence been so one-sided as to justify the direction of a verdict; because it was not one-sided. The judge took the only possible ground for a directed verdict; that is the theory commonly called the "last clear chance," which means that if two persons have been at fault and their faults are in sequence, the second comer in certain circumstances will be held solely responsible for the injury. It is not necessary to define the limits of that doctrine, which indeed is not very clear either in rationale or in scope. It is enough here to say that at least one condition upon it is that the person last in fault must have become aware of the earlier fault, and have some chance to shape his own conduct according to the changed situation which its consequences present to him. Chunn v. City, etc., Ry., 207 U. S. 302, 309, 28 S. Ct. 63, 52 L. Ed. 219; Kansas City So. Ry. v. Ellzey, 275 U. S. 236, 241, 48 S. Ct. 80, 72 L. Ed. 259; Iowa Central Ry. v. Walker, 203 F. 685 (C. C. A. 8); Penn. Ry. Co. v. Swartzel, 17 F.(2d) 869 (C. C. A. 7). The mutual approach of these two vehicles was not such a situation; the legal relations arising from that approach did not comprise a sequence of separate duties, but a single nexus of mutual and continuing duties up to the very moment of the collision, or at least until a few seconds before. For example, the defendant's very duty to warn the plaintiff was so involved in the plaintiff's duty to watch for trains that its only basis was the possibility that the plaintiff might fail to protect himself. That would not have been true

if the track had been hidden, or perhaps if the collision had been at night; but as things were, the plaintiff had ample means of seeing the train, and the only reason for any warning was that he might not use them. Nor was there a period during which the plaintiff was alone subject to any duty after the defendant's duty had ceased; the duty of each lasted for as long as the plaintiff could do anything to stop the car. Finally, there was no period during which the plaintiff, having learned of the defendant's fault, had an opportunity to accommodate himself to it and failed to do so. That again would have been true, if the plaintiff had discovered the train without the help of whistle, bell, or wigwag. He would then have been obliged to stop, if he had still time; and if he had tried to cross and been caught, he would have had himself alone to thank. But there was no suggestion that either the plaintiff or the driver actually saw the train; only that they should have seen it, and it is precisely that difference which is critical upon the issue which the judge selected.

We cannot find anything to the contrary in the Canadian decisions construing the statute. The defendant chiefly relies on Gauley v. Canadian Pac. Ry. (1930) 4 Dom. L. R. 354, decided by the Appellate Division of the Ontario Supreme Court. In that case the railway's only fault was that the speed of the train at the crossing was above the prescribed limit of ten miles an hour, though by how much did not appear. The plaintiff had said that he did not see the train, and one judge did not believe him and held that he had deliberately tried to pass in front of it. Two others thought that the excess of speed above the statutory limit played no part in the result. The fourth dissented, though he would have divided the damages in another proportion than the jury. Obviously the only part of the decision which can be relevant here is the finding that the unlawful speed of the train had nothing to do with the collision. Literally this was, of course, not true; at a different speed that train would not have been on that crossing at that moment. What we understand the two judges to have meant, is, that the speed limit was designed to protect wayfarers by making it easier in the presence of danger for the engineer to stop the train and a driver to stop his car, before either reached the crossing. That had nothing to do with a collision where neither saw the other in time to have stopped even though the train had been moving at only ten miles. We cannot see that the decision touches the situation before us; but if it does, that of the

Supreme Court of the Dominion in Nixon v. Ottawa Electric Co., (1933) Supreme Court Reports, 154, is closer on the facts, and is the other way. There the plaintiff crossed a track on foot without looking for an approaching electric car, which was coming on at too great a speed. The motorman failed to stop in time to save her, either because he did not see her at all, or was going too fast, if he did. The case was held to be within the Ontario statute, and a recovery allowed, though the plaintiff was as much the sole author of her injuries as here. Had she looked at any time before the moment she stepped upon the track, she would have saved herself; she could have done so even after it was too late to stop the car. Green v. Canadian National Ry., (1932) Supreme Court Reports, 689, is more nearly like the case at bar on the facts; but as the Ontario statute was not involved, it is important only in so far as it may throw light upon the Canadian law of contributory negligence. Since, however, this appeal would have to be decided in the same way whether the plaintiff was negligent or not, we may disregard it. Stringfellow v. Atlantic Coast Ry. Co., 64 F.(2d) 173 (C. C. A. 5), reversed 290 U. S. ——, 54 S. Ct. 175, 78 L. Ed. ——, arose under a Florida statute similar to that of Ontario; and the facts also were much like those at bar. A majority of the Circuit Court of Appeals, finding the driver of the motor car to have been the sole cause of the collision, affirmed a judgment against his representative; but reversed one against the representative of passengers in his car. It is perhaps hard to see how the driver could be the sole cause of his own death, and the railroad a factor in the children's death. At any rate, so the Supreme Court thought, and reversed for that reason. This final upshot is not important here. In Irvine v. Metropolitan Transport Co., (1933) Ontario L. R. 823, the plaintiff had not seen a truck standing in the street until he ran his car into it; he was allowed a recovery under the statute, mainly on the authority of The Volute, (1922) 1 A. C. 129, a case which held no more than that a second person at fault is not necessarily the only one liable. A common aphorism is that any new wrong "breaks the causal chain," and The Volute may be useful as an answer to that thoughtless and thoroughly false generalization; but neither it, nor Irvine v. Metropolitan Transport Co., has a very close bearing on the case here. We do not need them; it is clear that the case before us is not one of "last clear chance" either under Canadian law or our own.

Judgment reversed; new trial ordered.