CHAPMAN v. LOUISVILLE & N. R. CO.
No. 470.

District Court, E. D. Kentucky.
Sept. 2, 1947.

See also, D.C., 66 F.Supp. 694.

J. Mott McDaniel, of Frankfort, Ky., Northcutt & Northcutt, of Covington, Ky., and Tilford & Weatherby, of Louisville, Ky., for plaintiff.

C. S. Landrum, C. E. Rice, Jr., and Wilson, Harbison, Kessinger, Lisle & Bush, all of Lexington, Ky., for defendant.

FORD, District Judge.

This is an action for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by the widow and administratrix of Thomas L. Chapman, who was killed while engaged in the performance of his duties as an employee of defendant in connection with the operation of the defendant's interstate railroad. It is alleged that Chapman's death was caused by the negligence of the defendant's employees in the operation of certain railroad engines.

The case is submitted upon motion of defendant for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The question is whether the pleadings, depositions, admissions and affidavits on file disclose any genuine issue in respect to defendant's negligence as a causitive factor in Chapman's death.

It appears from the record without controversy that at about midnight on September 2, 1943, the plaintiff's intestate, while on duty as station operator at Yaden, a small station on defendant's railroad in Breathitt County, Kentucky, received an order from the train dispatcher which his

794

duties required him to deliver to the engineer in charge of two "helper" engines which were then approaching the station. The engines with their tenders were coupled together and were backing toward Yaden from the North after having been disconnected from a freight train which they had helped over a nearby hill. The order received by Chapman was of the type which, by the use of a device in the shape of a hoop to which the order was attached, he, while standing close to the track, was expected to hand up to one of the crew on the lead engine as it slowly passed him. When the backing engines reached a point about 600 feet North of Yaden, the engineer of the lead engine, who controlled the movement of both engines, gave the usual station signal, to which Chapman responded by displaying a yellow light on the order board, the customary signal for the engines to proceed at reduced speed so as to enable the station operator to deliver, the order in the usual manner.

The record further shows without dispute that James Amerine, the fireman on the lead engine, being located in the cab of the engine on the side next to the station, was keeping a lookout for the operator in expectation of receiving the order from him, and just as the tank of his engine had about reached a walkway which extended from the station door to the railroad track, at the end of which the operator usually stood in delivering such an order, he saw Chapman, for some unaccountable reason, step from the end of the walkway on to the railroad track "directly in front of our engine tank." The engine was then moving at a speed of about 2 to 4 miles per hour. According to the affidavit of the engineer, Walter T. Goe, who was on the opposite side of the cab of the engine, the fireman said to him, "Walter, I dont see that fellow. Did he come out on your side? He went behind the tank." Mr. Goe was then apparently seated with his back toward the forward movement of his engine for he says that he then "turned around and looked and told the fireman 'No, I dont see him anywhere.'" He did not apply the emergency brake. The automatic brake which was in operation at the time did not bring the engine to a stop until it had traveled a distance of at least 100 to 115 feet from the end of the walkway, the point where the fireman saw Chapman enter upon the track. After the engines were stopped, Chapman's dead body was found on the track under the tank of the second engine lying about midway of the tank and cut in two across the chest. The testimony of plaintiff's witnesses tends to show that the body was struck down and run over at the place it was found on the track for there was no indication that it was dragged or otherwise moved along the track after being struck down. The witnesses give different estimates of the distance from the end of the walkway to the place where the body lay upon the track. Witnesses for the plaintiff fix the distance at from 30 to 40 feet, while those for the defendant estimate it at much less.

In view of the affidavits of witnesses for plaintiff that, at the speed the engine was moving (2 to 4 miles per hour), it could have been stopped almost instantly by the use of the emergency brake and that, with the automatic brake alone, it could have been stopped in less than 30 feet, the conflicting evidence as to the distance the engine proceeded, after the engineer knew of Chapman's position of danger and before he was stricken down, relates to a fact which is obviously quite material upon the question whether, after discovering Chapman's peril, the engineer was negligent in failing to exercise reasonable care with the means at hand to stop the engine before it reached the point where Chapman was finally run over and killed. Under the so-called "last clear chance" doctrine, liability for such negligence, notwithstanding contributory negligence on the part of the victim, was recognized by the Federal Courts long before statutory sanction was provided by Sec. 3 of the Federal Employers' Liability Act, 45 U.S.C.A. § 53 Kansas City So. R. Co. v. Ellzey, 275 U.S. 236, 241, 48 S.Ct. 80, 72 L.Ed. 259; Chunn v. City & Suburban Ry. Co., 207 U.S. 302, 309, 28 S.Ct. 63, 52 L.Ed. 219; Grand Trunk R. Co. of Canada v. Ives, 144 U.S. 408, 429, 12 S.Ct. 679, 36 L.Ed. 485; Inland & Seaboard Coasting Co. v. Tolson, 139 U.S. 551, 558, 11 S.Ct. 653, 35 L.Ed. 270.

A finding of culpable negligence predicated upon the circumstances under

which, with knowledge of the imminent danger to which Chapman was exposed, the engineer failed to apply the emergency brake but took the time to turn around and look to see whether he came out on the opposite side of the track, would not seem so unreasonable as to justify the court in precluding consideration of the question by a jury, even though the attendant facts and circumstances make the question one about which reasonable men might fairly differ.

■ "The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury." Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 600.

■ Moreover, the dangers incident to Chapman's midnight duties, the hazards of the place which one witness described as a "fog trap" between two mountains and which another witness (defendant's employee W. H. McGuire) described as so dangerous that "to take one ordinary step beyond the end of the walkway placed the operator in a place of peril," the absence of a protecting barrier or guard rail at the end of the walkway in view of the prevailing weather conditions, fog, rain and darkness, are material facts for a jury to weigh and appraise in determining whether the defendant was negligent in failing to use reasonable care to furnish Chapman a safe place to work. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

According to the teaching of Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444.

" * * * To withdraw such a question from the jury is to usurp its functions.

"The right to trial by jury is 'a basic and fundamental feature of our system of federal jurisprudence.' Jacob v. New York City, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166. It is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. That method of determining the liability of the carriers and of placing on them the cost of these industrial accidents may be crude, archaic, and expensive as compared with the more modern systems of workmen's compensation. But however inefficient and backward it may be, it is the system which Congress has provided. To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them."

Since it thus appears that the case involves genuine issues as to material facts, the defendant's motion, as well as the plaintiff's cross motion, for summary judgment should be denied.

■ It seems practicable, however, that in conformity with Rule 56(d) an order be entered specifying the material facts that appear without substantial controversy so that upon the trial they shall be deemed established and the trial conducted accordingly. To that end each of the parties may, within twenty (20) days, serve upon the other and submit for the consideration of the Court such orders along that line as they or either of them may wish to propose.