**YOUNG v. CITY OF NEW ORLEANS**

——

(June 16, 1930.  Opinion and Decree.)
(July 23, 1930.  Rehearing Refused.)
(October 8, 1930.  Writ of Certiorari and Review Refused by Supreme Court.)

——

Sanders, Baldwin, Viosca & Haspel, of New Orleans, and Edward Dubuisson, of Opelousas, attorneys for plaintiff, appellant.

McCloskey and Benedict, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J.  Plaintiff, as widow, brings this suit for damages for the death of her husband, who was severely injured in a collision between a switch engine of the defendant, the Public Belt Railroad Commission of New Orleans, and a grocery wagon which the deceased was driving at the time of the accident, on April 11, 1924, at 11:30 a. m., at the intersection of Bienville street and the tracks of defendant near the river in this city.

The petition charges several grounds of negligence against the defendant, as follows:

That the engine was operated at an excessive and dangerous rate of speed at a public crossing; that no crossing signal was given; that no flagman was stationed

at the crossing to warn traffic of the approach of trains; that the engine was not under proper control in approaching a dangerous crossing so that the accident could have been prevented, particularly as the view of persons proceeding out Bienville street was blocked by freight cars parked on each side of the street.

Defendant denied liability and pleaded contributory negligence, averring that it was free from fault and that the accident was the result of the deceased's negligence.

The matter was tried before the district judge, who rendered judgment in favor of defendant, dismissing plaintiff's suit, and plaintiff has appealed.

The record shows that on April 11, 1924, about 11:30 a. m., deceased was driving a canopied grocery wagon, drawn by a mule, on Bienville street in the direction of the river. He was on his way to deliver merchandise to a boat docked at the wharves on the Mississippi river in the immediate vicinity of the accident. Bienville street is about 45 feet wide and crosses North Front street and the tracks of defendant, Public Belt Railroad, the Southern Pacific Railroad, and Louisville & Nashville Railroad, almost at right angles. The tracks run from Canal street towards Esplanade avenue along the Mississippi river front. The distance over all of these tracks is about 300 feet, and there are some thirteen tracks, including main line tracks and switch tracks, belonging to the above-named railroad companies.

There were three men working for the defendant in the shops of the Public Belt Railroad: Arthur Fenger, a painter, who acted as pilot to take engines to respective points in the railroad yard; Clarence

P. Buist, the master mechanic, who acted as engineer; and Mr. Murphy, a machinist, who acted as a fireman on such occasions. On the day of the accident these three men brought an engine to a point in the railroad yards above Jackson avenue, and were returning with a light switch engine, which was backing on the main line track from the direction of Canal street towards Esplanade avenue. Fenger was on the footboard of the coal tender of the switch engine, acting as pilot, Buist was in the cab, acting as engineer, and Murphy was performing the duties of a fireman on the engine.

On the city side of the main line track, on which the engine was traveling, is a switch track belonging to the Public Belt Railroad, and on this switch track there were box cars parked on both sides of Bienville street, leaving an opening between them for traffic moving to and from the river on Bienville street. There were several box cars in each of these "cuts or strings" of cars, and they approached to within about 10 feet of Bienville street on either side.

At the place where the collision occurred there was considerable vehicular traffic, due to the fact that boats are unloaded at the Bienville street landing on the Mississippi river. The deceased had crossed ten tracks, including the track on which the box cars were parked, and as he ventured from behind the box cars to the main line track of the defendant, which was the eleventh track from the city side, the tender of the switch engine struck the wagon about at a point between the front and rear wheels, on the right side, causing it to tilt on a 45-degree angle, and the force of the impact caused the deceased, who was driving the wagon, to fall to the ground, beneath the wagon. The wagon

was pushed about 3 feet by the engine, when it came to a stop on the lower side of the intersection. The wagon was slightly damaged and the mule uninjured, but the deceased received an injury to his back that appeared serious and he was placed in an ambulance of the Charity Hospital and removed to that institution. On the same day he was transferred to the Flint-Goodridge Hospital, where he was treated for his injuries until May 18, 1924, when he died.

We find it unnecessary to discuss all the charges of negligence, because, conceding that the defendant was free from fault originally and that the deceased was guilty of negligence in venturing on the track, the most favorable view that can be taken of the record as far as the defendant is concerned, but without deciding either of these issues, we are of the opinion that this is a case for the application of the doctrine of the last clear chance.

Plaintiff produced two eyewitnesses, who were elderly colored men employed on the wharves at the river, and both testified that the bell and the whistle signals were not given at the time the engine approached the crossing and that the train was not "puffing," or making any noise. One said the engine approached the crossing at a fast rate of speed, the other said about twelve or fifteen miles per hour.

These two witnesses are contradicted by Fenger, the pilot of the engine, and Buist, the engineer, and Albert Wolf, a colored yard boy in the employment of the defendant, who testified that the bell and whistle signals were given.

Fenger and Buist both testify in substance that the switch engine was backing down the main line track toward Esplanade avenue and there were some box cars parked on the switch track adjacent to the main line track on the city side, which obstructed their view of traffic approaching on Bienville street from the city side, going in the direction of the river; that the engine approached the crossing at about five miles per hour; that the whistle signal was given 75 or 90 feet before reaching the crossing and that the fireman was ringing the bell all the time; that when the coal tender was within about 20 or 25 feet of Bienville street they noticed the head of a mule coming from behind the box cars and going toward the river on Bienville street, and that Arthur Fenger, the pilot, gave a "washout" signal (a signal given with the arms to stop immediately), when within about 20 feet of the mule; that the mule at that time was either walking fast or on a slow trot; that Fenger, in order to save himself from injury, climbed up on top of the coal tender, and the coupler on the coal tender struck the wagon on its right front side, causing it to tilt over; that the engine was then brought to a stop within 3 feet after it struck the wagon; and that the deceased fell from the wagon and was later taken to the hospital. Both of these witnesses further testified that the engine was going at a rate of speed about as fast as a man would ordinarily walk or about five miles per hour, and that the brakes and mechanism of the engine were in good order; that after the mule was seen coming from behind the box cars, the "washout" signal was not immediately given, and that the whistle signal, was not given, but that the engineer, Buist, shut off the throttle and applied the air brakes; that the flagman or pilot could have run ahead and flagged the crossing, because the engine was moving so slowly, but that he did not do so; that they did not consider themselves an experienced train crew,

but only acted in such capacities when it was necessary to place an engine somewhere in the railroad yards.

Albert Wolf, a witness for the defendant, testified that Fenger began giving the stop signal 30 or 40 feet from the crossing.

Geo. W. Hillman, a civil engineer in defendant's employment, testified that the distance between the main line track on which the engine was moving and the switch track on which the box cars were stationed was 8 feet; and that Bienville street was 45 feet wide.

We are convinced that the engineer had sufficient opportunity to stop the engine before striking the wagon and after discovering its presence. We feel that if the engineer had applied the brakes to the engine when he saw the mule's head coming from the rear of the box cars, the engine at that time, moving at the rate of speed of five miles an hour (about as fast as a man ordinarily walks), would have been stopped within 20 or 25 feet, as defendant's witnesses estimate the distance. If he had given a blast of the whistle when he saw the mule coming from behind the cars, it might have been sufficient warning to deceased to stop the wagon and thus prevent the accident. If the flagman, Fenger, had run ahead and flagged the crossing (as he and the engineer admit he could have done), a necessary precaution under the circumstances, the accident would probably not have occurred. It was a clear day and the tracks were dry, and there is no reason why the train should not have been stopped after the presence of the mule was discovered by the pilot and the engineer, who both testified they saw the head of the mule about the same time, coming from behind the cars.

The case of Betz v. Illinois Central R. R. Co., 161 La. 930, 109 So. 766, 767, is applicable here. There the plaintiff sued for damages as the result of a collision between his hearse and a switch engine of the defendant company at a street crossing in the city of New Orleans. There were four tracks about 3 feet apart and covered a space of about 35 feet. The view of the driver of the hearse was cut off by the Protection Levee until he was nearly on the tracks. The engine was backing and was coupled to a caboose. The accident happened in the daytime, and the court gave judgment for plaintiff on the theory of the doctrine of the last clear chance. The court said:

"The engineer testified that his train was running about 8 miles an hour; that at that speed the train could be stopped in 20 or 25 feet; that when he first saw the hearse come upon the crossing very slowly he was about 30 feet away, and that he did not apply his brakes until he was within 15 feet of the hearse.

"The trial judge found, and the evidence supports the finding, that the engineer could have seen the hearse approaching the crossing, and about to cross the track, at a distance of about 250 feet, and had ample time and opportunity of blowing his whistle and to have stopped his engine and avoided the collision.

"The engineer did not blow his whistle, there was no lookout on the tender, and the brakes were not applied until the engine was within 15 feet of the hearse.

"'The last clear chance doctrine, as applied to railway crossing accidents, is that if, after the engineer has seen the danger of the person on or near the track, he can stop his engine and avert the accident, and fails to do so, the person injured can recover in spite of his own negligence.' Belle Alliance Co. v. Texas & Pac. R. Co., 125 La. 778, 51 So. 846, 19 Ann. Cas. 1143."

In the case of Nash v. La. Ry. & Navigation Co., 153 La. 410, 96 So. 14, which was

a case where there was an accident at a railroad crossing between the plaintiff's mule and wagon and the defendant's train, the court held that the plaintiff was free from fault or contributory negligence because, when he emerged from behind the box cars, his mules were already on the tracks and the train was upon him.

In the present case the distance between the main line track on which the engine was traveling and the switch track on which the box cars were parked was only 8 feet, so that the mule must have been practically upon the main line track before the driver's view of the on-coming train became unobstructed.

Defendant relies principally upon three cases, which we do not believe are controlling because the doctrine of last clear chance was not involved in them. The first is that of B. & O. R. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. We further distinguish the case from the present one because there the train was crossing a rural highway in a section where it was customary for the train to run at a very high rate of speed, and the nearest obstruction to the crossing was more than 200 feet away. The case would have no application where the accident occurred at a dangerous intersection in a thickly populated portion of a city where the traffic was very heavy. See Teague v. St. Louis S. W. Ry. Co. (C. C. A.) 36 F. (2d) 217.

The second case cited by the defendant is Gibbens v. N. O. Terminal Co. et al., 159 La. 349, 105 So. 367. That case is not applicable to the present one because the court found there that the view of the plaintiff of the on-coming train was unobstructed when he was within 50 feet of the tracks.

The third case relied on by defendant is that of Barnhill v. Railway Co., 109 La. 43, 33 So. 63. That case is not in point because the pedestrian who was injured had ample time and space in which to stop and look before attempting to cross, after coming from the rear of the box cars.

As to the quantum, the record shows that the deceased was 55 or 56 years of age, colored, and employed to drive a grocery wagon, and had earned wages of about $14 or $15 a week, and that he had worked regularly and was in good health. He left no children and the sole dependent is his surviving widow. He appears to have suffered considerable pain because of the injuries to his back and spinal column which paralyzed him and confined him to his bed for more than a month in a hospital, where he died on May 18, 1924. We believe the sum of $4,000 is an adequate award under the circumstances. The funeral bill and doctor's bill amounting to $280.30 will also be allowed.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of Mrs. Rosie Young, widow of Charles Sylvester, plaintiff, and against the defendant the city of New Orleans in the sum of $4,280.30, with legal interest thereon from judicial demand until paid, appellee to pay the costs of both courts.