**DAVIDSON v. AMERICAN DRUG STORES, Inc., et al.***

No. 16619.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

Hugh M. Wilkinson, A. Miles Coe, and George M. Leppert, all of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee.

WESTERFIELD, Judge.

Mrs. Ida M. Davidson, widow of Charles M. Morales, brought this suit against the American Drug Stores, Inc., and the Own-

*Rehearing denied Oct. 4, 1937.

ers Automobile Insurance Company, Inc., its insurance carrier, for the sum of $24,400 as damages for the negligent injury and resulting death on September 21, 1934, of Charles M. Morales, as a result of a collision with a motorcycle which, at the time of the accident, was being driven by David Matthews, who is alleged to have been an employee of the American Drug Stores, Inc., acting within the scope of his employment.

Before the case was heard below, the Owners Automobile Insurance Company of New Orleans became insolvent and the case was conducted against the American Drug Stores, Inc., alone.

The suit was originally defended upon the ground that Matthews, the driver of the motorcycle, was not guilty of primary negligence and, in the alternative, that Morales, the deceased, was guilty of contributory negligence barring recovery. By supplemental answer the further defense was set up that David Matthews was an independent contractor and not the servant of defendant for whose actions or negligence defendant cannot be held responsible.

The case was tried without a jury and resulted in a verdict in favor of plaintiff in the sum of $5,000. Defendant has appealed. Plaintiff has answered the appeal and asked that the amount of the judgment be increased to $10,000.

We shall first consider whether Matthews was defendant's servant. Matthews owned a motorcycle and applied to defendant for employment in connection with the delivery of packages. The following agreement was executed:

"New Orleans,.

"September 7th, 1934

"Agreement between David Matthews and the American Drug Stores, Inc.

"David Matthews agrees to deliver packages for the American Drug Stores, Inc., at the rate of one (1¢) cent per package plus Fifteen ($15.00) Dollars per week to be advanced for gasoline, repairs, and other expenses.

"David Matthews agrees to furnish motorcycle and all help necessary.

"It is understood that David Matthews is working solely on contract and that he is entirely responsible for any accident which may occur while handling the American Drug Stores' deliveries.

"David Matthews also agrees to take out proper insurance and to deposit policy with the American Drug Stores, Inc.

"David Matthews [Signed]
"1565 Chippewa St."

"Servants" are defined by the Code as those "who let, hire or engage their services to another in this State, to be employed therein at any work, commerce or occupation whatever for the benefit of him who has contracted with them, for a certain price or retribution, or upon certain conditions." Revised Civil Code, art. 163.

Article 164 of the Code divides servants into three classes:

"1. Those who only hire out their services by the day, week, month or year, in consideration of certain wages; the rules which fix the extent and limits of those contracts are established in the title: *Of Letting and Hiring*.

"2. Those who engage to serve for a fixed time for a certain consideration, and who are therefore considered not as having hired out but as having sold their services.

"3. Apprentices, that is, those who engage to serve any one, in order to learn some art, trade or profession."

The following definition of an "independent contractor" is quoted in Ravare v. McCormick & Co., 166 So. 183, 185, decided by our brethren of the Second Circuit:

"What is an independent contractor? It is defined as 'one who is rendering services, an independent employment or occupation, and represents the employer only as to the results of his work, and not as to the means whereby it is to be done.' 39 C.J. § 1517, p. 1315. The most generally applied test of the relationship is the 'right of control as to the mode of doing the work contracted for.' Id. § 1316; Faren v. Sellers, 39 La.Ann. 1011, 3 So. 363, 4 Am.St.Rep. 256; Gallagher v. Southwestern Exposition Ass'n, 28 La.Ann. 943."

■ The control of the conduct of the individual and the authority or power to discharge is an important consideration.

In 5 Ruling Case Law, Permanent Supplement 3519 (supplementing 14 Ruling Case Law, 72, § 9), is found the following:

"The right to control the conduct of another implies the power to discharge him from the service or employment for disobedience; and, accordingly, the power to discharge has been regarded as the test by which to determine whether the relation

of master and servant exists. Montain v. Fargo, 38 N.D. 432, 166 N.W. 416, L.R.A.1918C, 600, Ann.Cas.1918D, 826."

■ The fact that there was a written contract between Matthews and the American Drug Stores is a circumstance to be considered in the determination of the relationship between them, but it is in no sense conclusive. The true test is, as the name "independent contractor" suggests, the degree of independence or subserviency which the terms of the contract would reasonably create. There is also to be considered the question of good faith, that is to say whether the contract was prepared, as suggested by counsel, solely for the purpose of evading responsibility for accidents due to the operation of the motorcycle by Matthews.

Considering first the second point raised by counsel, that is as to the sincerity of the parties to the agreement, we find from the evidence that the contract was prepared by a Mr. W. T. Hall, an insurance agent who represented an insurance company doing business with the American Drug Stores. It also appears from the evidence that Matthews was not an ideal person with whom to enter into a contract of any sort. He was a penniless young man with subnormal mentality, whose sole possession appeared to be a secondhand motorcycle which he had acquired while working for the United States Works Progress Administration. He was or had been subject to epileptic seizures, due, we are told, to the fact that when he was ten years old, he sustained a severe blow on his head. He was unable to pay for the premium on the insurance policy which the contract obligated him to do, so it had to be advanced by the American Drug Stores. At the time of the accident he had only paid $2 on account of the $42.50 which had been paid, though it is fair to say that he had not been in the defendant's employ more than two weeks. The contract obligated Matthews to supply all necessary help required in the delivery of the packages. The record indicates that he supplied no help. The compensation mentioned in the contract of one cent per package would, according to the testimony, enable Matthews to earn about $2.50 per week, since it appears that about 250 packages were delivered each week. One of the managers of the defendant company testified that the $15 allowed for gasoline and other expenses in connection with the operation of the motorcycle was to be applied also to living expenses. If so, there is nothing in the contract to indicate it or to authorize it and the effect would be to cast suspicion upon the frankness of the transaction. The contract states that: "David Matthews is working solely on contract and is entirely responsible for any accident which may occur while handling the American Drug Stores' deliveries." This clause is the most suspicious provision in the agreement. In the first place, it can add nothing to or subtract nothing from the status of Matthews as an independent contractor and neither increase nor decrease the extent of his responsibility for accidents which might occur while handling the deliveries for the American Drug Stores. If Matthews was, in fact, an independent contractor, he would, of course, be responsible for the result of accidents arising in the course of the execution of his contract, but the fact that this statement appears in the contract itself could only have the effect of creating suspicion as to the actual relationship between the parties. Moreover, Matthews' responsibility was a minus quantity.

Finally, the contract is for no definite term and may be ended at any time by the American Drug Stores. The right to terminate a contract of employment at will is a strong indication that the relation created by the contract is that of master and servant.

In 14 Ruling Case Law, p. 72, is found the following:

"Power to Terminate Contract.—The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, that the unrestricted right of an employer to end the particular service whenever he chooses, without regard to the final result of the work itself. On the other hand, the fact that the employer cannot terminate the employment strongly tends to show that the contractor is independent. The relation between the parties is, however, to be determined from all the surrounding indicia of control, and the sole circumstance that the employer has reserved the right to terminate the work and discharge the contractor does not necessarily make the contractor a mere servant. The

contractor does not generally lose his independence because the contract empowers the employer to terminate the employment upon the happening of some contingency, such as a breach of. the covenants of the contract. The courts do not make the right to discharge the employee the decisive test whether he is an independent contractor, but look to the broader question whether he was in fact independent or subject to the control of the person for whom the work is done, as to what should be done and how it should be done."

Another circumstance must be considered: the American Drug Stores carried compensation insurance to cover injuries to its employees received in the course of their employment. After the accident a lump-sum settlement was made by defendant's insurer with Matthews as compensation for the injuries which he received in this particular accident. It is true that the officers of the defendant company testified that they knew nothing about the settlement with Matthews by their insurance carrier, but the fact remains that a settlement was made and would indicate that the insurance company and its advisers believed that Matthews was an employee of the American Drug Stores which must have submitted his name with a list of other employees unless of course the payment was made in error or out of a spirit of charity.

On the whole we are convinced that the contract between Matthews and his employer was simply one of employment and could not have the effect of relieving the American Drug Stores of responsibility for damage to third persons due to Matthews' negligence while acting in the scope of his employment upon the ground that Matthews was an independent contractor.

Charles. M. Morales, an old gentleman seventy-five years of age, alighted from a street car on the neutral ground at the intersection of St. Charles avenue and Robert street at about 6:30 p. m. September 21, 1934, with the intention of crossing the lake side roadway of St. Charles avenue, to reach the sidewalk on that side. The roadway is approximately 24 feet wide. Matthews was driving his motorcycle up St. Charles avenue in the direction of Carrollton avenue and, as he approached Robert street, saw Mr. Morales standing on the neutral ground when about 100 feet away from him. He struck Morales at a point near the lake side sidewalk, knocked

him down, and injured him, with the result that he died about three hours afterwards.

■ The charges of negligence imputed to Matthews consist of his alleged failure to give warning of his approach, to keep a proper lookout, to have his headlights burning, and excessive speed. We are convinced that the motorcycle was traveling too fast. The speed limit established by the municipal Ordinance No. 13702, C.C.S., for St. Charles avenue at the point of the accident is thirty miles per hour. Matthews appears to have been running between thirty-five and forty miles per hour according to the preponderance of the testimony in the record. He saw Mr. Morales, by his admission, when 100 feet distant. He also admitted that when he saw him he was facing "across St. Charles" and looked like he was going to cross the street. Counsel for defendant challenges the accuracy of this admission upon the ground that the answer was suggested by the cross-examination of plaintiff's counsel and calls attention to the fact that Matthews subsequently stated that Morales was looking across the street "when I hit him * * * but before I hit him he was looking up St. Charles." But we are not without other evidence on this point.

There was a boy by the name of Alvin Fernandez riding on the motorcycle with Matthews. Fernandez, when asked where Morales was when he first saw him, replied:

"I seend him, when I seen him, when he was coming across. the track; he didn't see him, not the boy, I spied him and we were half a block away from him, a man standing on the end of the neutral ground and he steps off the neutral ground and when he gets out in the middle of the street, he thought he could beat us over and he tried to dodge and when he tried the boy tries to dodge him and when he did this man steps right in his way and the boy knocks him down."

This answer is not particularly intelligent, but sufficiently so to reveal the fact that Fernandez had seen Morales when one-half block away from him. He repeats this statement later when he says, "that man thought he could beat us over; we were half a block away from him," and again when asked: "You were half a block away from him when he started to cross the street?" replied: "Yes, sir; he was walking kind of slow and stopped and

he figured he could beat us over and stepped off the curb on the street and he hesitated for a while and stopped and started diving and dodging and the boy started swinging and dodging."

Moreover, Matthews must have been at least 100 feet from Morales when Morales started to cross the roadway which, as we have said, was 24 feet in width, because in order to collide with Morales say, in the center of the street, both Matthews and Morales had to reach that point. If, therefore, the motorcycle was traveling forty miles per hour, it was going 58.7 feet per second. It would certainly require more than two seconds for a seventy-five year old man to walk from the neutral ground to the point of contact, a distance of twelve feet; therefore, when Morales started to cross the motorcycle must have been 117.4 feet from the corner. If the speed of the motorcycle was thirty-five miles per hour, as is testified to by some, then it would have been 102.6 feet away. If Matthews did not see Morales when he started to cross, he should have seen him because Fernandez saw him and Fernandez was seated behind Matthews on the motorcycle. Matthews will be held to have seen that which he should have seen. Gibbons v. New Orleans Terminal Company, 1 La. App. 371.

It, therefore, conclusively appears that the deceased was seen or should have been seen by Matthews, the driver of the motorcycle, when, at least, 100 feet away from him and that his intention to cross the street was also apparent. Notwithstanding this fact, Matthews made no effort to keep Morales in sight and avoid striking him. He was, therefore, negligent in failing to take such precautions as would have avoided the accident. Oliver Hicks v. Texas & New Orleans R. R. Company, 186 La. 1008, 173 So. 745, 747, of the docket of the Supreme Court of Louisiana.

It is said that Morales was guilty of contributory negligence in that he left a place of safety on the neutral ground and entered a roadway of St. Charles avenue at a point from 50 to 100 feet above the intersection of Robert street and far removed from the pedestrian traffic lane, in violation of sections 1, 2, and 4 of article 4 of Ordinance No. 13,702 C.C.S. Article 4 of the Ordinance, § 2 (c), reads as follows:

"Every pedestrian crossing a roadway at any other point other than within a marked or unmarked cross-walk shall yield the right of way to vehicles upon the roadway."

We are unable to fix with certainty exactly where Morales crossed St. Charles avenue. Several witnesses testified that the accident happened between 50 and 75 feet from the corner of Robert street. Matthews, however, in a statement signed five days after the accident declared that Morales was at the intersection when the accident happened. Mr. Walter Suthon, a distinguished member of this Bar, who happened to be driving his car near the scene of the accident at the time, stated that the body of Mr. Morales was lying between 5 and 10 feet from the intersection immediately after the accident. Assuming, however, that Mr. Morales did cross the street at a point other than the usual pedestrian lane of traffic, that fact does not constitute negligence per se.

In the case of Pettaway v. K. C. S. Drug Company, Inc., et al. 166 So. 902, 905, the Court of Appeal for the Second Circuit, said:

"Therefore, the decisions, in the Fernandez and Mequet Cases [Fernandez v. Montz, 151 La. 299, 91 So. 742, and Mequet et al. v. Algiers Manufacturing Co. Ltd., 147 La. 364, 84 So. 904] are not authority for the proposition that a person who crosses a street between intersections cannot recover if injured, unless the doctrine of last clear chance is applicable. The proper rule of law seems to be that in the absence of a prohibitory statute or ordinance, a pedestrian has the right to cross a street at any point within the block, and it is not negligence as a matter of law to cross between intersections or at some point other than a regular crossing. Huddy's Encyclopedia of Automobile Law, vol. 5-6, § 97. As no such prohibitory law has been called to our attention, we think that even if Julia Pettaway crossed between intersections, that fact alone did not render her negligent."

It is said that Morales was guilty of negligence in walking into the street in the face of approaching traffic which was plainly visible. The traffic which was approaching the corner of Robert street consisted of two automobiles, both of which were passed by the motorcycle because of its greater speed. It may well be doubted, therefore, whether there was any imprudence in Morales in attempting to cross the street under the prevailing conditions, but if he was imprudent and may be said

to be guilty of negligence recovery cannot be denied on that ground because it is quite plain that the last clear chance of avoiding the accident rested with Matthews.

In the case of Hicks v. Texas & New Orleans R. R. Company, supra, a situation quite similar was presented. There the court said:

"In the case of Kansas City So. R. Co. v. Ellzey, 275 U.S. 236, 48 S.Ct. 80, 81, 72 L.Ed. 259, the Supreme Court of the United States said:

" 'This language suggests that the Circuit Court of Appeals thought this case to be governed by the doctrine of the last clear chance. That doctrine, rightly applied in the Chunn Case ([Chunn v. City & Suburban Ry. Co.] 207 U.S. 302, 28 S. Ct. 63, 52 L.Ed. 219), amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident.'

"The same rule was adopted by this court as appears in the case of Rottman v. Beverly, 183 La. 947, 165 So. 153. See, also, Santos v. Duvic, 16 La.App. 105, 133 So. 399; Young v. City of New Orleans, 14 La.App. 306, 129 So. 247; Porto Rico Ry., Light & Power Company v. Miranda (C. C.A.) 62 F.(2d) 479, certiorari denied 289 U.S. 731, 53 S.Ct. 593, 77 L.Ed. 1480; McCormick & Co. v. Cauley (La.App.) 168 So. 783; Monk v. Crowell & Spencer Lumber Co. (La.App.) 168 So. 360; Iglesias v. Campbell (La.App.) 170 So. 265, and Loewenberg v. Fidelity Union Casualty Co. (La.App.) 147 So. 81."

In the Restatement of the Law of Torts, vol. 2, p. 1254, par. 479, we find the following comment on clause B relative to the last clear chance:

"It states that the negligent plaintiff may recover although the defendant does not know of the dangerous position in which the plaintiff's negligence has put him. It is enough that the defendant would have known of the plaintiff's dangerous position had he been exercising that vigilance which it was his duty to the plaintiff to exercise."

See, also, McCormick & Co. v. Cauley, 168 So. 783, 785, where this court, in speaking of a similar situation, said:

"Whether he actually saw the other vehicle in time to stop is of no moment. He should have seen it, and the doctrine of the last clear chance applies just as effectively against one who should see approaching danger but fails to look for it as it does against one who actually sees it and fails to avoid it. American Law Institute, Restatement of the Law of Torts, vol. 2, § 479."

Our conclusion is that plaintiff should recover.

■ On the question of quantum it appears that Mr. Morales, who had been earning a salary of about $200 a month prior to October, 1933, was, at the time of his death, working on a commission basis and receiving about $25 per month in commissions. He did not die immediately as the result of his injuries but about three hours later, during which time it appears that he suffered considerably. He had been married to plaintiff for fifty years.

In the case of Pizzitola v. Letellier Transfer Inc., 167 So. 158, this court affirmed a judgment of $6,500 in favor of a widow for the negligent killing of her seventy-four year old husband. We do not believe the award in this case should be less than that approved in the Pizzitola Case.

For the reasons assigned the judgment appealed from is amended by increasing the amount awarded plaintiff from $5,000 to $6,500, and as thus amended it is affirmed.

Amended and affirmed.

JANVIER and McCALEB, Judges (concurring).

Morales was not negligent in stepping from the curb of the neutral ground and in attempting to cross the street because, when he did so, he had ample time to cross in front of the automobiles which were in view. There was no reason for him to anticipate that another vehicle—the motorcycle of Matthews—would pass around the automobiles on the wrong side and at an unlawfully high speed. We, therefore, quite agree that there should be recovery for the death of Morales, which resulted solely from the negligence of Matthews. Neville v. Postal-Telegraph-Cable Co., 13 La.App. 76, 126 So. 720, the facts of which were somewhat similar, has been considered but found clearly distinguishable, for there the motorcycle passed the automobile on the proper side and the cause of the accident was the negligent failure of Mrs. Neville to see the motorcycle, or to anticipate its presence. Being in accord with the ultimate

conclusion of our associate, we concur in the decree, and therefore regret that we find it necessary to disagree with a view expressed by him which we think is not essential to the conclusion reached.

■ We differ with him concerning the application to the doctrine of discovered peril of the rule that one must be held to have seen what an ordinarily prudent person would have seen. If two persons are involved in an accident and the negligence of both extends to the very moment of the accident and each continues, until the moment of the impact, to have an opportunity to avoid collision, then there is no room for the application of the doctrine of the last clear chance. Harrison v. La. Western R. Co., 132 La. 761, 61 So. 782; Castile v. O'Keefe, 138 La. 479, 70 So. 481; Chargois v. M. L. & T. R. R. & S. S. Co., 148 La. 637, 87 So. 499; Jarrow v. City of New Orleans, 168 La. 992, 123 So. 651. But if one actually discovers the fact that an accident is impending, and, while having an opportunity to avoid it, realizes that the other is unconscious of the danger, then the one who discovers the danger of the other and fails to take advantage of the opportunity to avert it is liable for the resulting damage in spite of the continuing negligence of the other. Rottman v. Beverly, 183 La. 947, 165 So. 153; Hicks v. T. & N. O. R. Co., 186 La. 1008, 173 So. 745.

Our associate feels that, if neither actually discovers the peril of the other, nevertheless the one sued should be held liable because of the rule that one must be held to have seen what he should have seen. We cannot agree that that rule has any more application to the one person than to the other, and we, consequently, feel that there should be no recovery in such situation unless there is an actual discovery by one of the peril of the other.

In Rottman v. Beverly, supra, the Supreme Court discussed the doctrine of discovered peril, which is closely akin to the doctrine of the last clear chance, and held that in this state it may be invoked to hold a defendant liable only if it can be shown that the negligent defendant, or his employee, actually discovered the negligence of the plaintiff in time to avert an accident—actually discovered the peril—and the court rejected the view which prevails in a few jurisdictions that liability results from failure to discover the peril

of the other, as well as from failure to avoid it after discovery.

In Hicks v. T. & N. O. R. Co., supra, recovery was permitted because the employee of defendant "discovered that plaintiff had placed herself in a perilous position with her back turned towards him when he was 40 feet from her" and saw that she was unconscious of the danger and yet failed to avoid striking her, although the motor car, which he was operating, "could have been stopped within 26 feet." In other words, there was an actual discovery of the peril and there was an opportunity to avoid injury.

But in that case the Supreme Court quoted from Kansas City Southern Ry. Co. v. Ellzey, 275 U.S. 236, 48 S.Ct. 80, 72 L.Ed. 259, language which our associate feels is authority for his view that, even if both persons, by not discovering the danger, continue negligent to the moment of the accident, there may still be a recovery by the one who is injured if the other could have seen the danger had he been careful. That language follows:

"That doctrine, rightly applied in the Chunn Case ([Chunn v. City & Suburban Ry. Co.] 207 U.S. 302, 28 S.Ct. 63, 52 L.Ed. 219), amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident."

■ The words "or unaware of it only through carelessness" are entirely proper where it is the doctrine of the last clear chance which is involved because that doctrine applies only where the negligence of one of the persons has ceased to have active effect, has become passive; where, whatever may have been his original negligence, he no longer has the opportunity to avert the impending accident. Where this is shown and the other person still has an opportunity to avert injury, his failure to do so renders him liable under the doctrine of the last clear chance and he is liable whether he actually saw the other person or not. He should have seen him and that is sufficient. But that rule does not apply where the other person has still an opportunity to save himself and, through his own negligence, fails to avail himself of it. That the Supreme Court of the United States clearly realizes this is shown by the last part of the above quotation to the ef-

fect that, in order that the rule stated shall apply, it must appear that the defendant "had in fact a later opportunity than the plaintiff to avert an accident." There can be no later opportunity in the one so long as the other also has an opportunity himself.

Our associate, in his opinion, refers to the Restatement of the Law of Torts of the American Law Institute and he quotes the following:

" * * * plaintiff may recover although the defendant does not know of the dangerous position in which the plaintiff's negligence has put him. It is enough that the defendant would have known of the plaintiff's dangerous position had he been exercising that vigilance which it was his duty to the plaintiff to exercise."

But that statement is part of section 479, which declares in large type at its beginning that it applies only where "the plaintiff is unable to avoid it (the accident) by the exercise of reasonable vigilance and care"; in other words, that if the plaintiff has lost the opportunity to save himself, then and only then may plaintiff recover if defendant's negligence consists in his failure to see the plaintiff.

The statement of the rule as quoted by our associate is very accurate where the doctrine of the last clear chance is involved, but it has no application where it is the doctrine of discovered peril which must be depended upon. In McCormick & Co. v. Cauley (La.App.) 168 So. 783, 786, one of the authors of this concurring opinion stated that " * * * the doctrine of the last clear chance applies just as effectively against one who should see approaching danger but fails to look for it as it does against one who actually sees it and fails to avoid it." But that case involved the doctrine of the last clear chance where the driver of the other vehicle, which was practically in the intersection, had no longer the opportunity to avoid the crash. Where he has lost the opportunity, the other party has the later chance—the *last* chance—and where·he has, then his failure to see may be charged against him and may create liability. But where both, as we have several times said, have an equal opportunity, then neither has the last chance and neither may recover since the negligence of each consists in failure to discover the other.

And why should the rule be otherwise? In law or in logic, why, if both persons are negligent each in failing to see the other, should one be held liable solely because he does not see and the other be permitted to recover? Suppose both are injured? Each may say: "I was injured because you, who could have seen, did not." If the plaintiff may recover in spite of his own continuing negligence just because the defendant did not see him, then recovery, where both are injured, would depend upon who could first bring suit.

We reiterate our regret at finding it necessary to disagree on the point which we have discussed, but concur in the decree.