## DUPUY et al. v. GODCHAUX SUGARS, Inc., et al.*

### No. 16815.

Court of Appeal of Louisiana. Orleans.

Nov. 28, 1938.

Jno. E. Fleury, of Gretna, and Robert A. Ainsworth, Jr., and Porteous, Johnson & Humphrey, all of New Orleans, for appellant Mrs. Julia Dupuy.

Edward Rightor and W. H. Sellers, both of · New Orleans, for appellees Godchaux Sugars, Inc., and General Accident, Fire & Life Assurance Corporation, Limited.

Leo W. McCune, of Gretna, and W. T. Holloway, of Jonesboro, for appellee succession of William J. Hammon.

JANVIER, Judge. ·

This litigation results from an automobile accident on the concrete roadway known as the "Airline Highway" which connects New Orleans with Baton Rouge. It is contended by plaintiff that three automobiles were actually involved and that another, a fourth, to some extent influenced the ultimate result. The vehicles were about five miles west of Laplace, which settlement is some thirty or thirty-five miles from New Orleans; the time was about 4:30 p. m. on December 27,

*Rehearing denied Jan. 10, 1939.

1934; the weather rainy; the road was wet and slippery.

■ Damas Dupuy, the husband of one of the plaintiffs in this suit, was a guest passenger in a small Ford truck, which was being driven by his son, Henry Dupuy, from New Orleans to Baton Rouge. The other plaintiffs were the major children of the said Damas Dupuy and we may say at this point that, though the record does not indicate why. no judgment was rendered on their claims, it is very evident that they were without right of action since their mother, the surviving spouse of Damas Dupuy, has a right of action and is prosecuting it in this litigation. Article 2315 of the Civil Code provides that major children may bring suit for the death of their father only if there is no surviving spouse, nor minor child.

In the truck, also, were Louis Ernest and John McDevitt, the last-named a "hitch-hiker" who had been "picked up" as the truck left the limits of New Orleans. The other vehicle which was admittedly involved in the accident was an automobile owned and operated by William J. Hammon, who was proceeding towards New Orleans, or in the direction opposite to that in which the Dupuy Ford truck was going. A third vehicle which was admittedly at the scene was a truck of Godchaux Sugars, Inc., on its way west. It was filled with field hands, who, because of the rain, were being removed from the sugar cane field in which they had been working. The fourth vehicle which, according to plaintiff's witnesses, was also present but which was not involved in the accident except indirectly, was an automobile of which no description is given, but which they say was ahead of the Hammon car and going in the same direction. There was a violent collision between the Hammon car and the Dupuy truck. Hammon was killed instantly; Damas Dupuy died on the following morning, and Henry Dupuy, Louis Ernest and John McDevitt were injured.

Solidary judgment is prayed for by Mrs. Julia Dupuy against Mrs. Jennie Hammon, Administratrix of the Succession of William J. Hammon, Godchaux Sugars, Inc., and General Accident, Fire & Life Assurance Corporation, Ltd., the automobile liability insurance carrier of Godchaux Sugars, Inc. Mrs. Dupuy charges that Hammon was negligent in that he attempted to pass around the car proceeding in front of him, when, because of the approach of the Dupuy truck, there was not sufficient room for him to complete the manoeuver. She also charges that he was operating his car at a speed higher than that permitted by the dictates of caution under the conditions which confronted him. It is charged that when he realized that he could not pass around the car which was ahead of him, he violently applied his brakes, with the result that, because of the excessive speed and the wet condition of the roadway, his car slid, or skidded out of control and crossed back and forth, and finally headed towards the left, or wrong side of the roadway, where it collided with the Dupuy truck, on the front seat of which plaintiff's husband was riding.

It is also alleged that the driver of the Godchaux truck was at fault in that he was operating that vehicle too closely in the rear of the Dupuy truck, with the result that, as the latter, by contact with the Hammon car, was brought to a sudden stop or was suddenly slowed up, it was immediately struck in the rear by the Godchaux truck with such violence that the damage already sustained was greatly augmented. It is contended that, in so closely following the Dupuy truck, the driver of the Godchaux truck violated not only the dictates of prudence, but also and particularly the provisions of Title 2, § 3, Rule 8, subds. (a) and (b), of Act No. 21 of 1932, which provides as follows:

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.

"(b) The driver of any motor truck, when traveling upon a highway outside of a business or residential district, shall not follow another motor truck within one hundred (100) feet, but this shall not be construed to prevent one motor truck overtaking and passing another."

It is further alleged that the driver of the said truck was negligent in not applying his brakes when it was necessary for him to do so and, in the alternative, it is contended that, if he did apply his brakes, they were defective and did not sufficiently reduce the speed and momentum of the said Godchaux truck.

It is contended by the Estate of Hammon that the Hammon car did not leave its proper position on the road, but that, when Henry Dupuy, in attempting, at high speed, to pass the Godchaux truck, which was

ahead of him, crossed to the left or wrong side of the road and then realized that, because of the approach of the Hammon car, he could not go around the Godchaux truck, he suddenly applied his brakes with the result that his automobile slid and skidded into the approaching Hammon car.

It is the contention of the Godchaux Company and of its liability insurance carrier that the Godchaux truck was not involved in the accident except in a most unimportant and inconsequential way and that its driver was in no way at fault. Those defendants maintain that that truck —on its proper side of the road and going at moderate speed—was ahead of the Dupuy truck until a few seconds before the crash; that Dupuy, at high speed, passed the Godchaux truck on its left and attempted to regain his proper position on the right but could not do so before striking the oncoming Hammon car; that this impact with the Hammon car caused the Dupuy car to come to a sudden stop or to so reduce its speed that it was almost directly in front of the Godchaux truck and so close to it, because of this sudden emergency, that the driver of the Godchaux truck, Duhe, found it impossible to stop his truck and attempted to swerve it around the vehicles which collided and that, as he did so, there may have been a slight and unimportant contact between that truck and the Dupuy truck but that there was no violent impact.

It is also maintained by the Godchaux Company and by its insurer that, even if there was a serious crash between those two vehicles, the driver of the former was not at fault and that, furthermore, the damage had already been sustained in the collision with the Hammon car and was not thereafter augmented or added to by the second impact.

In the court below there was judgment in favor of plaintiff in the sum of $2,500, but only against the Estate of Hammon, and her suit as against the other defendants was dismissed. From this judgment she has appealed, asserting that not only should all the defendants have been cast solidarily, but that the amount awarded is inadequate.

We are unable to find in this record, or in the records of any of the other suits which are based on the same accident, any appeal by the estate of Hammon, nor any answer by that Estate to the appeal of plaintiff.

We find no evidence to contradict the overwhelming proof that Hammon's· car skidded for some distance and came to rest after the accident on the left, or wrong side, of the road. The witnesses do not agree entirely as to his speed, but we are convinced that it was excessive and that, for some reason, he completely lost control. There is doubt as to the reason for his attempting to apply his brakes— which application caused the skidding of his car—plaintiff's witnesses stating that he was endeavoring to pass another car proceeding ahead of him and the Godchaux witnesses making no mention of such other, or fourth car. But, as we have said, there is no doubt as to the speed of his car, nor as to its skidding, nor as to it being on the wrong side of the road.

While it has been held that mere skidding is not in itself conclusive evidence of carelessness (Smith v. Roueche, La. App., 153 So. 487; Leitz et al. v. Rosenthal, La.App., 166 So. 651, Stroud v. Davis-Lawhead Funeral Home et al., La.App., 154 So. 476, Monroe v. D'Aunoy, La.App., 143 So. 716), it is obvious here that the Hammon car, under the circumstances of weather, speed and the presence of other vehicles, was negligently operated, and that this negligence was a factor in the resulting castastrophe, and, though there is much evidence which is pointed to by counsel for the Estate of Hammon as proof that Henry Dupuy was himself negligent in not stopping his truck after he saw and should have appreciated the imminence of danger, it is apparent that Damas Dupuy was in no way involved in that contributory negligence—even conceding that it could be characterized as such—and that there was not sufficient time for him to warn his son or to himself do anything which might have averted the crash. Furthermore, in the absence of an appeal by the Estate of Hammon, on an answer by that Estate to the appeal which is before us, we could not amend the judgment in his favor, or reverse it even if we found that the negligence of Henry Dupuy—if there was such negligence—could be imputed to Damas Dupuy.

Therefore, conceding arguendo that Henry Dupuy was at fault, this would not prevent recovery for the death of Damas Dupuy, a guest passenger in his automobile.

We, therefore, pass to a consideration of the evidence touching upon the

actions of the Godchaux truck in an effort to determine whether there was, on the part of its driver, negligence which had causal connection with the death of Dupuy. The major dispute in the case arises on the issue of whether the Godchaux truck had for sometime been following closely behind the Dupuy truck, or had been passed by the latter only a few seconds before the crash with the Hammon car. On behalf of plaintiff, Henry Dupuy, Louis Ernest and John McDevitt stated that the Godchaux truck had always been in the rear, or at least had never been in front of them, and that almost coincidental with the head-on collision between their truck and the Hammon car the Godchaux truck crashed into the rear of their truck with great violence, and, of course, if this occurred, there was negligence on the part of Duhe, the driver of the Godchaux truck, because not only must he have been violating the provisions of Rule 8 of the highway statute (Act No. 21 of 1932, § 3), from which we have already quoted, but it would follow that he was violating the well-established rule that, regardless of statute or other law, every driver must at all times so operate his vehicle as to be able to stop before crashing into a preceding vehicle which may be required, because of emergency, to make a sudden stop, or unexpectedly to reduce its speed.

■ On the other hand, if Henry Dupuy, in attempting to drive around the Godchaux truck, found at the last instant that he could not do so and was required to suddenly stop in front of the Godchaux truck and before completely regaining his proper place on the road, the driver of the Godchaux truck could not be said to have been negligent in not completely extricating himself from the emergency created entirely by the other driver, or by other drivers. Obviously the judge of the district court believed that this was the truth of the matter and there appears to us to be ample evidence to justify such a conclusion.

McDevitt, the "hitch-hiker" who had been picked up by Dupuy and who was sitting in the rear of his truck, stated on the witness stand that the Godchaux truck had been following for sometime and had crashed into the Dupuy truck with great violence. In fact, he made rather little of the crash with the Hammon car and seemed to feel that the real damage was caused by the rear end impact. Yet it appears that shortly after the accident, when

he himself gave thought to the matter of recovering from the negligent party or parties for his own damage, in a signed statement given to his attorney he made not the slightest reference to the fact that the Godchaux truck was in any way involved in the accident. In fact, he did not mention such a truck.

On behalf of plaintiff much is made over the fact that the Godchaux truck, after the accident, proceeded quite a distance beyond the point of impact and then came to rest on the left or wrong side of the road.

We do not attach any importance to this because, when the driver of that truck turned it to the left in an effort to avoid the Dupuy car, it was only proper that, as soon as he saw that he was not seriously involved, he should proceed across the road and out of the way of any other possible traffic, and it appears that this is what he did. There was no reason for him to bring the car to a sudden stop after he had already passed the two vehicles which were actually concerned.

As indication of the fact that there was no serious impact between the Godchaux truck and the Dupuy truck, it appears that in the Godchaux truck there were some 30 or 35 field laborers, none of whom is shown to have received the slightest injury. It is hard to believe that, if this truck had crashed into the one ahead of it at such speed as to have caused the severe damage which it is contended it did cause, none of these employees would have received an injury.

Duhe, driving the Godchaux truck, said that the Dupuy truck passed his two seconds before running into the Hammon car.

Frank Wilkinson, another employee of the Godchaux Company, was in the front seat of that truck. He said that the Dupuy truck "whizzed by us" and, he added, "just when I saw the truck, he crashed into the car".

Two of the field laborers who were in the Godchaux truck were called as witnesses. One of these, J. C. Criddle, at first stated that the Dupuy truck had passed the Godchaux truck a few "minutes" before the crash with the Hammon car, but finally stated that it had passed "just a few seconds" before.

N. H. Criddle, another of these witnesses, said that the Dupuy truck passed them "about a few seconds before the crash".

It is evident that none of those in the Dupuy truck at first attached more than secondary importance to the rear end impact with the Godchaux car because it appears that at no time until just before the institution of suit—nearly a year after the accident—were any demands made on the Godchaux Company or on its insurer. Of course, this delay does not in itself indicate that they did not believe the driver of the Godchaux truck was at fault, but, when considered in connection with the other evidence, we believe that the conclusion is irresistible that they did not at that time give serious thought to the possibility that Duhe was in any way responsible.

On the trial below, all of the witnesses who were in the Dupuy truck referred to the rear end impact with the Godchaux truck as being a terrific crash and they all show plainly a desire to create the impression that the real cause of the damage was that crash and not the original collision with the Hammon car. They attempt to convince the court that the tail-gate of the Dupuy truck was very much crushed and mashed by the impact with the Godchaux truck. But the evidence leaves no doubt in our minds that the Godchaux truck, after the accident, was found to have sustained practically no damage, the only marks found upon it the next day being scratches on the fender and on the door. It is impossible that it could have received such slight damage and yet have been the cause of the terrific crushing which the photographs of the Dupuy truck would indicate that that truck received. As a matter of fact, the body of the Dupuy truck was removed after the accident and remained for a very long period unused and stored in a place where it could easily have been accessible to outside influences, so that the condition in which it was when the photographs were taken many months after the accident might well have been entirely different from that in which it was found immediately after the collision.

Looking at the evidence as a whole, we reach the conclusion that the Godchaux truck, if it was involved at all in the accident, only grazed the rear end of the Dupuy truck and that it did this only because the said truck was brought to a sudden stop, directly in front of it, too late for the Godchaux truck to be brought to a stop.

The sole remaining question is the quantum. In the court below, as we have stated, plaintiff was awarded $2,500. She was 63 years of age, had been married since December, 1891, and had five children, all of whom were of age. Her sole support was her deceased husband, who was a farmer cultivating fifteen acres of land. In his younger days he had worked as a "swamper" and had also been a trapper. At the time of his death he was 63 years old.

While, of course, as has so often been said, it is impossible to adopt a standard which could govern in all cases, a comparison of the facts here with those involved in other recent cases leads to the conclusion that the amount awarded was inadequate.

In Quintano v. Ibos, 14 La.App. 73, 128 So. 186, the deceased was 67 years of age and was earning $100 a month. He died the day after the accident and his widow was awarded $4,000.

In Young v. City of New Orleans, 14 La.App. 306, 129 So. 247, the deceased was about 55 or 56 years old and earned regularly about $14 per week. He died about a month after receiving the injuries. The court allowed $4,000.

In Richard et al. v. Baldwin et al., La. App., 167 So. 872, the deceased was 63 years old, a negro farmer. He was apparently instantly killed. His widow was awarded $4,000.

We believe that $4,000 would be more in line with recent adjudications.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the increase thereof to $4,000, and that, as thus amended, it be and it is affirmed. Defendant, Mrs. Jennie Hammon, Administratrix of the Succession of William J. Hammon, to pay all costs.

Amended and affirmed.